157

[No. 84929-3. En Banc.]
Argued May 5, 2011. Decided November 21, 2012.

*In the Matter of the Personal Restraint of* PATRICK L.
MORRIS, *Petitioner*.

*David B. Zuckerman*, for petitioner.

*Richard A. Weyrich, Prosecuting Attorney*, and *Erik Pedersen, Deputy*, for respondent.

*Jeffrey E. Ellis* and *Suzanne L. Elliott* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 OWENS, J. — Patrick L. Morris filed this timely personal restraint petition, alleging a violation of his right to a public trial when the trial court conducted part of voir dire in chambers. Further, he claims his appellate counsel was ineffective for failing to raise the violation on direct review.

In *In re Personal Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004), we resolved a similar claim on ineffective assistance of appellate counsel grounds. This case is analytically indistinguishable from *Orange*. We therefore reaffirm *Orange* and hold that where appellate counsel fails to raise a public trial right claim, where prejudice would have been presumed on direct review, a petitioner is entitled to relief on collateral review. Morris additionally challenges evidentiary decisions by the trial court relating to a proposed defense expert witness and argues that his trial counsel was ineffective in handling the expert testimony issue. We hold that Morris fails to meet his burden on the evidentiary and trial counsel issues. Because of Morris's ineffective assistance of appellate counsel, we reverse and remand for a new trial.

## FACTS

¶2 In 2004, Morris was convicted of two counts of first degree sexual molestation and one count of first degree rape of his daughter, A.W., who was five years old when she disclosed the abuse. Morris's defense was that the allegations were false and part of an effort by A.W.'s mother to terminate his parental rights. The jury disagreed and he was sentenced to 189 months in prison.

¶3 The record indicates that jury selection began in open court. After conducting some of the voir dire proceedings in the courtroom, the trial court announced, "Well, Ladies and Gentlemen, we have some interviews to do of those people who indicated they wanted to talk privately. We have quite a few of those to do, actually." Pers. Restraint Pet. with Legal Arg. & Auths. (PRP), App. A at 45.[1] The trial court then moved proceedings into chambers.

¶4 The record does not contain any reference to the factors a court must consider when closing proceedings to

---

[1] We rely on the additional Verbatim Report of Proceedings (VRP) that appears in "Appendix A" of the PRP because the transcripts that were certified to this court exclude the voir dire portion of trial proceedings. VRP (June 8, 2004) at 3.

the public under *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).[2] Nor does it contain any other discussion or acknowledgment of Morris's right to a public trial. The record does not reveal if anyone besides the prospective jurors, counsel, court employees, and the defendant was present in the courtroom before proceedings were moved into chambers. Neither the State nor counsel for Morris moved for the private voir dire, and neither objected to conducting the proceedings in chambers. However, Morris did waive his own right to be present during the portion of voir dire conducted in chambers. In so waiving his right to be present, defense counsel indicated that "it would be more likely for jurors to be more forthcoming with what they are talking about if [Morris] were not in the room." PRP, App. A at 46.

¶5 Once in chambers, the prosecutor and defense counsel, along with the trial judge, questioned 14 prospective jurors and excused 6 for cause. The prospective jurors were selected for private interviews based only on their personal preferences indicated in their questionnaires. Some jurors opted for private questioning to discuss prior personal experiences with sexual violence, while others revealed just that they preferred to not talk in front of groups. The remainder of voir dire "resume[d] in the courtroom." *Id.* at 93.

---

2
 "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
 "2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
 "3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
 "4. The court must weigh the competing interests of the proponent of closure and the public.
 "5. The order must be no broader in its application or duration than necessary to serve its purpose."
*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

¶6 During trial, as part of his defense, Morris proposed to call Lawrence Daly, a former police investigator with experience interviewing child victims of sexual abuse, to testify about several subject matters relating to the State's investigation of the case. The State challenged Daly's testimony. After hearing testimony from Daly and the parties' arguments about the admissibility of his testimony, the trial court limited Daly's testimony to certain subject matters. The trial court ruled that Daly *could* testify about the differences between his interview of A.W. and the interview of A.W. conducted by the State's investigator, Candy Ashbrook, including differences in interview techniques. However, the trial court ruled that Daly could not testify about the suggestibility or potential coaching of A.W. The trial court ruled that testimony about scientific studies about the suggestibility of children was inadmissible under this court's holdings in *State v. Swan*, 114 Wn.2d 613, 656, 790 P.2d 610 (1990), and *State v. Willis*, 151 Wn.2d 255, 261, 87 P.3d 1164 (2004).

¶7 The trial judge additionally ruled that Daly could not testify about the "standard of care" of law enforcement officers as it compared to Detective Kathleen Ryan's investigation of this case. Detective Ryan acknowledged during cross-examination that she did not personally interview anyone for this case, that she did not carefully read the medical reports, and that the Anacortes Police Department does not have any policies or procedures for the investigation of sexual abuse allegations. With regard to admitting Daly's proposed testimony about a standard police investigation of sexual abuse allegations of a child and how it compares to Detective Ryan's investigation, the trial judge reasoned that "[t]he jury isn't going to be asked to evaluate Detective Ryan's standard of care. [They] may think she's a lousy Detective, but that doesn't really matter in terms of what they have to decide, does it?" Verbatim Report of Proceedings (VRP) (June 14, 2004) at 76.

¶8 Morris's defense ultimately did not call Daly as a witness. While both Daly and the defense expressed timing

concerns regarding Daly's availability, the reason for not calling him is unclear because on the same day that he was present and the trial court approved his testimony in part, the defense called Morris, not Daly, to the stand. The defense also rested its case without showing the videotape of Daly's interview of A.W. after which the State called a rebuttal witness and sought to play the videotape of Daly's interview of A.W. for the jury. Defense counsel indicated some concerns about playing the videotape but ultimately did not object:

THE COURT: You want the whole [tape]?

[DEFENSE COUNSEL]: Yes, if it's going to be played at all.

THE COURT: All right. What do you mean "if it's going to be played at all"?

[DEFENSE COUNSEL]: Well, apparently it's going to be played.

THE COURT: No objection then to playing the whole thing from beginning to end?

VRP (June 15, 2004, afternoon) at 3-4. There was no objection. The defense did not object to the foundation of the videotape or to identifying the interviewer as a "defense child interview expert." VRP (June 16, 2004) at 2-3. The defense did not call Daly to the stand to explain anything about the interview.

¶9 On direct appeal, Morris challenged several evidentiary decisions of the trial court, particularly the admission of testimony by four State witnesses. He also claimed ineffective assistance of counsel for his counsel's failure to object to the witnesses' testimony. The appeal did not include a claim regarding the right to a public trial. The Court of Appeals affirmed Morris's conviction. We denied Morris's petition for review, and the mandate issued in August 2007. He timely filed this PRP with the Court of Appeals in August 2008, raising several new issues. The Court of Appeals stayed review pending the final resolution of two cases, which impacted the public trial right issue—

*State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010), and *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009) (plurality opinion). Upon their resolution, the Court of Appeals certified Morris's PRP for review by this court based on his public trial right claim. Specifically, the Court of Appeals asked "[w]hether a personal restraint petitioner must establish prejudice before he or she may obtain relief from an alleged violation of the right to a public trial." Order of Cert. We accepted review of all issues raised in Morris's PRP.

## ISSUES

¶10 1. Did the trial court violate Morris's right to a public trial by conducting voir dire in chambers?

¶11 2. Did the trial court err in refusing to admit portions of proposed expert testimony?

¶12 3. Did Morris receive ineffective assistance of counsel at trial for the handling of the expert witness's testimony?

¶13 4. Did these errors, if not individually redressible, result in cumulative error?

## ANALYSIS

1. Closure of the Courtroom during Voir Dire

 ¶14 Morris claims that the trial judge violated his right to a public trial by privately questioning 14 potential jurors in chambers. We hold that an appellate counsel's failure to raise a public trial right violation under such facts constitutes ineffective assistance of appellate counsel.

¶15 When we initially accepted review of this case it was to address how *Momah* and *Strode* impacted *Orange* and the courtroom closure issue. Since accepting review, we have decided two more cases, *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012), and *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012), which guide our analysis on the

courtroom closure issue. Those cases make it clear that failing to consider *Bone-Club* before privately questioning potential jurors violates a defendant's right to a public trial and warrants a new trial on direct review. *Wise*, 176 Wn.2d at 19-20; *Paumier*, 176 Wn.2d at 34-35. We need not address whether a public trial violation is also presumed prejudicial on collateral review because we resolve Morris's claim on ineffective assistance of appellate counsel grounds instead.

¶16 To establish ineffective assistance of appellate counsel, a petitioner must establish that (1) counsel's performance was deficient and (2) the deficient performance actually prejudiced the defendant. *Orange*, 152 Wn.2d at 814; *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). Here, there is little question that the second prong of this test is met. In *Wise* and *Paumier*, we clearly state that a trial court's in-chambers questioning of potential jurors is structural error. Had Morris's appellate counsel raised this issue on direct appeal, Morris would have received a new trial. *See Orange*, 152 Wn.2d at 814 (finding prejudice where appellate counsel failed to raise a courtroom closure issue that would have been presumptively prejudicial error on direct appeal). No clearer prejudice could be established.

¶17 The State, in claiming otherwise, attempts to circumvent the underlying public trial right violation by claiming that Morris implicitly waived his right to a public trial when he waived his right to be present. Waiver of the right to be present, however, should not be conflated with waiver of the right to a public trial. *See State v. Duckett*, 141 Wn. App. 797, 805-07, 173 P.3d 948 (2007). Morris waived his right to be present only *after* the trial judge moved voir dire proceedings in chambers. The rationale Morris's counsel gave for his waiver was that "it would be more likely for jurors to be more forthcoming with what they are talking about if he were not in the room." PRP, App. A at 46. One can easily imagine that such a consideration is especially valid in the presumptively close quarters in chambers, as com-

pared to the open courtroom. The closure itself may have compelled Morris to waive his right to be present. Moreover, a defendant must have knowledge of a right to waive it. *Duckett*, 141 Wn. App. at 806-07. Here, there was no discussion of Morris's public trial right before the closure. Thus, we do not find that Morris waived his right to a public trial.

¶18 Having established prejudice, the remaining question is deficiency. "[P]erformance is deficient if it falls 'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). This is a high threshold, and the petitioner "must overcome 'a strong presumption that counsel's performance was reasonable.'" *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). One method of overcoming this presumption is by proving that counsel's performance was neither a legitimate trial strategy nor a reasonable tactic. *Id.* at 33-34.

¶19 In this case, proving deficient performance necessarily requires proving that counsel should have known to raise the public trial right issue on appeal. Here, Morris's appellate counsel should have known to raise the public trial right issue even though we had yet to decide *Strode*. Morris filed his appeal in March 2005. *Orange* had been decided at that time and clarified, without qualification, both that *Bone-Club* applied to jury selection and that closure of voir dire to the public without the requisite analysis was a presumptively prejudicial error on direct appeal. *Orange*, 152 Wn.2d at 807-08, 814.

¶20 Morris's appellate counsel had but to look at this court's public trial jurisprudence to recognize the significance of closing a courtroom without first conducting a *Bone-Club* analysis. This case is no different from the situation in *Orange* where the appellate counsel failed to raise the public trial right issue. In *Orange*, "[t]he failure to raise the courtroom closure issue was not the product of

'strategic' or 'tactical' thinking, and it deprived Orange of the opportunity to have the constitutional error deemed per se prejudicial on direct appeal." *Id.* at 814. The *Orange* rule derived from the clear rule in *Bone-Club*. *Id.* at 812. The court reasoned that "had Orange's appellate counsel raised the constitutional violation on appeal, the remedy for the presumptively prejudicial error would have been, as in *Bone-Club*, remand for a new trial." *Id.* at 814. We accordingly remanded for a new trial in *Orange*. *Id.* We do the same here.

## 2. Trial Court's Exclusion of Expert Testimony

¶21 Morris challenges two of the trial court's decisions to preclude specific testimony of his proposed expert witness, Daly. The trial court ruled that Daly could not testify about the "standard of care" of police investigations involving allegations of sexual abuse or about studies regarding the suggestibility of young children. "We review a trial court's decision to exclude expert testimony for abuse of discretion." *Willis*, 151 Wn.2d at 262. "We review a trial court's interpretation of case law de novo." *Id.* at 261. To prevail on collateral review on a claim of evidentiary error, a petitioner must show that the error constitutes a " 'fundamental defect' amounting to a 'miscarriage of justice.' " *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 489, 965 P.2d 593 (1998) (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 811, 792 P.2d 506 (1990)).[3]

¶22 ER 702 allows for the admission of expert testimony. Such testimony is admissible if "(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific

---

[3] Here we apply the nonconstitutional error standard for collateral review. Morris argues that his evidentiary claims rise to the level of constitutional error because he was allegedly prevented from presenting a defense. *Cf. State v. Maupin*, 128 Wn.2d 918, 928-30, 913 P.2d 808 (1996) (treating failure by the court to allow Maupin to call a witness as constitutional error). However, Morris was allowed to present almost everything he wanted and to explore the theory of his case through both direct testimony and cross-examination.

community, and (3) the expert testimony would be helpful to the trier of fact." *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984).

¶23 On the two topics at issue, the trial court found that the information would not be helpful to the jury. "Under ER 702, expert testimony will be deemed helpful to the trier of fact only if its relevance can be established." *State v. Greene*, 139 Wn.2d 64, 73, 984 P.2d 1024 (1999).[4] The trial court ruled that Daly could not testify about the "standard of care" for police investigations of sexual abuse allegations. The stated rationale was that it would not be helpful to the jurors because "[t]he jury isn't going to be asked to evaluate Detective Ryan's standard of care." VRP (June 14, 2004) at 76. The State argued that the standard of care and breach are civil legal matters and were therefore irrelevant. The exacting focus on the terminology "standard of care," though the term came from the defense, was misguided. The defense's theory was clearly that the allegations of sex abuse were created by A.W.'s mother as part of a child custody dispute and went unchecked. The fact that the police failed to conduct a thorough investigation of the charges, beyond merely funneling information to the prosecutor's office, is relevant to the defense's theory.

¶24 However, we review the ruling under an abuse of discretion standard; a trial court's evidentiary ruling is an abuse of discretion only if it is "manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Even if we were to go as far as saying that the failure to admit testimony about standards for a police investigation was untenable, Morris must show that the error resulted in a "complete miscarriage of justice." *Cook*, 114 Wn.2d at 812.

---

[4] We decline to address the State's argument, raised for the first time on review, that Daly was unqualified as an expert and that his proposed testimony was not based on theories that are generally accepted. Further, there is sufficient evidence in the record regarding Daly's experience and the bases for his proposed testimony.

¶25 He cannot meet this burden. Detective Ryan admitted that she did little investigatory work, including that she did not interview any witnesses for this case. She also admitted that the Anacortes Police Department does not have any procedures or policies regarding the investigation of sex abuse cases. The defense was able to clearly establish that little police investigation occurred without the admission of expert testimony highlighting what should have been done. As a result, there was not a complete miscarriage of justice.

¶26 On the issue of testimony about the suggestibility of young child witnesses, the trial judge ruled, "That is the one thing *Swan* and *Willis* say; it's not admissible under this expert's testimony, the suggestibility of young children and how their memory could be affected by adult manipulation. This is not coming in." VRP (June 14, 2004) at 84. The trial court treated *Swan* and *Willis* as creating a categorical rule excluding expert testimony about the suggestibility of young children, but we clarified in *Willis* that this is not the case. *Willis*, 151 Wn.2d at 261. The court observed that while the suggestibility of young children is generally understood by the jury, "specialized knowledge regarding the effects of specific interview techniques and protocols 'is not likely within the common experience of the jury.'" *Id.* (quoting *State v. Willis*, 113 Wn. App. 389, 394, 54 P.3d 184 (2002)). The *Willis* court held that "merely because it is a matter of general knowledge that children's memories are changeable does not preclude testimony that specific interview techniques might compromise specific memories." *Id.* The trial court's statement of the law is an erroneous oversimplification. Because the rationale for the ruling was based on "untenable grounds," *Powell*, 126 Wn.2d at 258, the trial court abused its discretion. Under *Willis*, the trial court should have considered whether testimony about the suggestibility of young children, as it related to specific interview techniques, would have been helpful to the jury.

¶27 While error, Morris cannot show that it resulted in a complete miscarriage of justice. *See Cook*, 114 Wn.2d at 812. The trial judge allowed testimony on the difference between the State's and defense's experts' interviews and techniques, which could have included some of the relevant information the defense sought to introduce as "suggestibility" evidence. The defense was also able to cross-examine other witnesses about the suggestibility of child witnesses and therefore to present this theory in argument.

¶28 We hold that Morris cannot meet his burden to show that any evidentiary errors made by the trial court regarding the inadmissibility of certain subjects of proposed expert testimony resulted in a complete miscarriage of justice.

3. Ineffectiveness of Trial Counsel

¶29 To prove ineffective assistance of counsel at trial, Morris would have to show that his trial "attorney's performance was deficient and not a matter of [reasonable] trial strategy or tactics" and that he was prejudiced. *State v. Mannering*, 150 Wn.2d 277, 285, 75 P.3d 961 (2003) (citing *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996); *Strickland*, 466 U.S. at 687-89); *Grier*, 171 Wn.2d at 34. Morris alleges that two of defense counsel's actions meet this exacting standard. First, counsel failed to object to Daly's videotaped interview of A.W. Second, counsel decided not to call Daly as a witness to explain the videotape after its admission. Neither action, however, establishes ineffective assistance of counsel.

¶30 "Generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1 (2004); *see also Mannering*, 150 Wn.2d at 287 (finding the failure to call a defense expert witness to be strategic). Here, there are possible strategic reasons for not calling Daly, including that he was argumentative with the judge

and the prosecutor on the stand during the proffer for the admission of his testimony. VRP (June 14, 2004) at 42-43, 87 ("[DEFENSE COUNSEL]: . . . I noticed a definite deterioration between the two, [the prosecutor] and Mr. Daly, as the interview progressed."). To the extent the defense wanted to draw comparisons between Daly's interview and Ashbrook's interview of A.W., that was possible without Daly's testimony.

¶31 Morris also fails to rebut the presumption that his trial counsel's failure to object to the admission of the videotape was strategic or tactical. The certified record does not include the videotape or a transcript of it. However, defense counsel described the videotaped interview of A.W. as "[a]lmost a complete recantation" of statements A.W. made in the interview with Ashbrook. *Id.* at 75. Defense counsel also stated that A.W.'s statements "to Mr. Daly [were] virtually identical to what she testified to on the stand." *Id.* Admission of the interview, therefore, could be strategic. Even if it was not, Morris cannot show prejudice from the failure to object since the videotape, according to counsel, was redundant of testimonial evidence that was already admitted. We hold that Morris cannot meet his burden to show that any of trial counsel's actions were deficient.

## 4. Cumulative Error

■ ¶32 Finally, Morris argues that the alleged errors resulted in reversible cumulative error. The cumulative error doctrine applies "when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). For the reasons already noted, particularly that the defense was able to get in additional evidence relevant to its theory of the case, we hold that the alleged errors "had little or no effect on the outcome at trial" and therefore did not deprive Morris of a fair trial. *Id.*

## CONCLUSION

¶33 We hold that the trial court erred by conducting part of voir dire in chambers without considering the *Bone-Club* factors, effecting a violation of Morris's public trial right. We reaffirm *Orange* and hold that Morris is entitled to relief under his ineffective assistance of appellate counsel claim because this error would have been presumed prejudicial on direct review. On this basis, we reverse and remand for a new trial. Finally, while we note errors in the trial court's reasoning regarding the admission of the defense's proposed expert testimony, we hold that Morris fails to meet his burden to get relief on the bases of evidentiary errors and ineffective assistance of counsel at trial.

FAIRHURST and STEPHENS, JJ., and ALEXANDER, J. PRO TEM., concur.

¶34 CHAMBERS, J. (concurring) — I agree with the lead opinion that this case is analytically indistinguishable from our decision in *In re Personal Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), and that *Orange* therefore controls the disposition of this case. I write separately to address several points.

¶35 This court's jurisprudence regarding public trials under article I, sections 10 and 22 is still developing. As a threshold question in public trial rights cases, we should always decide first whether a closure of the courtroom has occurred. If there is no closure, then the analysis ends there.

¶36 We have just set forth a new test for determining whether an event constitutes a courtroom closure. In *State v. Sublett*, we adopted an "experience and logic" test from the United States Supreme Court. 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012) (plurality opinion) (quoting

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). Under that test, a closure is determined by examining (1) whether the place and process in question have historically been open to the public and (2) whether public access plays a significant positive role in the functioning of the process in question. *Id.* at 73.

¶37 It will not always be necessary to use this new test. For example, it is "well settled that the right to a public trial . . . extends to jury selection." *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005). The private questioning of individual jurors is plainly part of jury selection. Once this court has decided that a set of circumstances does or does not represent a closure, the issue is settled and it is no longer necessary to revisit the question with an experience and logic test or other analysis.

¶38 In this case, the question boils down to whether the defendant's counsel on appellate review should have known to raise the public trial issue. As the lead opinion makes clear, *Orange* had been decided at the time Morris filed his appeal. Lead opinion at 167. *Orange* stated without qualification that a *Bone-Club*[5] analysis applied to jury selection and that closure of jury selection without the required analysis was a presumptively prejudicial error on direct appeal. *Orange*, 152 Wn.2d at 807-08, 814. Because *Orange* should have made clear to all that private questioning of jurors outside the courtroom was an issue worth raising on appeal, I concur in the lead opinion.

¶39 MADSEN, C.J. (dissenting) — There are several cases presently before the court involving a criminal defendant's right to a public trial, including *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012) (plurality opinion); *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012); *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012); and *In re Personal Restraint*

---

[5] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

*of Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012) (plurality opinion). I am troubled by many aspects of the court's jurisprudence in this area and therefore have written an extensive concurrence in *Sublett* addressing many of the issues that have been presented in numerous recent cases before our court and the Court of Appeals. I am also writing in each of the cases to highlight important points that relate to the individual cases.

¶40 The present case, like *Wise* and *Paumier*, involves limited, private questioning of a few potential jurors on sensitive subjects. The only confirmed error regarding the public trial right that occurred in *Morris* (the present case), *Wise*, and *Paumier* is that the trial courts did not engage in the five-factor inquiry that is required under article I, section 22, of the Washington State Constitution prior to closing a portion of a criminal trial. This test was set out in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), and parallels the test required under the Sixth Amendment to the United States Constitution that must be satisfied before criminal proceedings are closed. *See Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

¶41 Under *Bone-Club*, inquiry must be made into whether the interest that the proponent of closure contends justifies closure is a compelling interest that overrides the defendant's right to a public trial and whether the proposed closure is essential to preserve that interest. The closure, if approved, must be the least restrictive form of available closure that will protect the threatened interest. An opportunity must be made for objections to closure. *Bone-Club*, 128 Wn.2d at 258-59.

¶42 We do not know, in these three voir dire cases presently before the court, whether the trial courts would have ordered the same closures in these cases following proper *Bone-Club* inquiries because none were made. Nonetheless, the majorities in these cases, as in other cases that have come before the court, conclude that reversal of the defendants' convictions and new trials are required because no *Bone-Club* inquiry occurred.

¶43 But with these holdings, the inquiry into whether closure was justified has been turned into the issue of whether the right to a public trial has been violated. Even when a closure would be fully justified under the *Bone-Club* inquiry and accordingly would be a fully constitutional closure and *not* a violation of the right to a public trial, nevertheless reversal and a new trial are required because the *Bone-Club* inquiry was not made.

¶44 This approach makes little sense when a posttrial *Bone-Club* inquiry could be made and could establish whether or not the closure met constitutional standards. As I show in my *Sublett* concurrence, many courts in other jurisdictions make such posttrial inquiries, either on the appellate record or on remand from an appellate court for entry of factual findings, or by way of a hearing and findings where the record is inadequate to resolve the issue.

¶45 Our state courts should do the same. There is no precedent or compelling constitutional principle that prevents a posttrial assessment. I do not say that the failure to conduct the *Bone-Club* analysis is not error. It is a serious error. But I believe it is senseless to turn the failure to conduct the inquiry, alone, into the most serious form of constitutional error that can occur, when a posttrial evaluation might show that no closure without adequate justification actually occurred. I have addressed this problem more extensively in my concurrence in *Sublett*, as well as in my dissents in *Wise* and *Paumier*.

¶46 *Morris* presents the issue in a different context than *Wise* and *Paumier*. *Morris* is here on collateral review. One would ordinarily think this means that the standards for review of personal restraint petitions would apply. But a majority of the court does not agree. Just as decisions of this court have taken the public trial right out of the normal realm of constitutional review, so has this decision turned its back on our directly applicable rules for collateral review.

¶47 I cannot agree with this approach. There is nothing about this issue that requires that we provide relief when Mr. Morris can show no actual and substantial prejudice, as he is required to show for claimed constitutional error raised for the first time on collateral review. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990). As Justice Wiggins correctly shows in his dissent, we have rejected the premise that error that is presumed prejudicial on direct appeal is also presumed prejudicial on collateral review. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992).

¶48 A majority of the court, however, concludes that this case is controlled by *In re Personal Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004). There are significant differences, however. First, as Justice Wiggins explains, the error in *Orange* was conspicuous in the record and appellate counsel should have noticed it.

¶49 Here, in contrast, all that the record shows is that no *Bone-Club* inquiry was made. But this does not equate to a violation of the right to a public trial. Moreover, the record shows that there was a valid reason for the limited voir dire in chambers on sensitive topics and this would indicate to reasonable appellate counsel that no constitutional violation occurred. The record also shows that the defendant affirmatively approved of the procedure, even going so far as waiving his right to be present so that jurors were encouraged to be more forthcoming in their responses to sensitive questioning than they might have been if he had been present.

¶50 Appellate counsel reviewing this record could reasonably conclude that the closure was justified on grounds of the jurors' interests in privacy *plus* the defendant's interest in a fair trial decided by unbiased jurors. Closure for the purpose of obtaining full answers to sensitive questioning served both of these purposes. At the same time, appellate counsel could well conclude that this closure for purposes of obtaining full disclosure did not contravene

any of the purposes served by the right to a public trial. The proceedings were recorded and transcribed as part of the public record of this case. Thus, at all times counsel and the court were contemporaneously and continuously reminded of their responsibilities in the criminal justice system and of the need to carry out these responsibilities fully and fairly. Because no witnesses were involved at this stage, there were no questions pertaining to witnesses, encouraging their testimony, or avoiding perjury.[6] Thus, the values that underlie the right to a public trial do not suggest a public trial violation.

¶51 Accordingly, there was no deficient performance that is apparent on the appellate record as there was in *Orange*. Rather, what is obvious is a sound trial choice to close the proceedings in aid of selecting unbiased jurors, and very little likelihood that the closure was unjustified.

¶52 But even if an issue remains about the ultimate questions, whether the right to a public trial was violated or whether appellate counsel should have acted differently, there is an existing procedure for finding answers to these questions. RAP 16.11 provides that a personal restraint petition can be sent to superior court for a reference hearing to determine disputed facts. If the *Bone-Club* inquiry conducted as part of a reference hearing leads to the conclusion that the closure was justifiable, then appellate counsel could not have been ineffective in failing to pursue the matter. Certainly no prejudice would have existed.

¶53 Like courts in other jurisdictions have done, this court can remand for a reference hearing to determine whether the closure of the proceedings for a limited time for limited questioning of a few of the potential jurors on sensitive topics was a constitutionally permitted closure of the proceedings. This is a far better course to take in this

---

[6] There is considerable irony in the fact that a process that benefited the defendant because it promoted more forthcoming disclosure by potential jurors and so aided in jury selection is now challenged because it was not conducted in public where this benefit would not have accrued to the defendant.

case than a summary decision that reversal and a new trial are required. I address this more fully in my concurrence in *Sublett*.

¶54 In short, I disagree with the treatment of this case as if it presents the same circumstances as in *Orange*. This is not true because in *Orange* the record showed that objection had been made to the closure. Here, both defense counsel and the defendant engaged in conduct that shows they agreed to the closure so that potential jurors would be more forthcoming in their answers regarding sensitive matters. These circumstances make this a far different case from *Orange*. Moreover, the closure here was of plainly apparent benefit to Mr. Morris. That was not true in *Orange*.

¶55 Moreover, to the extent there is a question whether the closure of the proceedings violated the right to a public trial, the Rules of Appellate Procedure provide a method for inquiring into the matter. The rules should be utilized. I dissent.

¶56 WIGGINS, J. (dissenting) — Eight years ago, Patrick Morris was convicted of two counts of first degree sexual molestation and one count of first degree rape of his daughter, A.W. A.W. was five years old when she disclosed the abuse to her mother and stepfather. At trial, Morris never objected to the trial court's decision to conduct partial voir dire of 14 venirepersons in chambers instead of in open court. On appeal, Morris never raised the partial voir dire in chambers as an error. Neither Morris nor the lead opinion can articulate any prejudice that resulted from this brief chambers voir dire. And yet, eight years later, the lead opinion overturns Morris's conviction and orders a new trial, subjecting this now-older but still-young girl to endure again the ordeal of testifying about this intensely private and hurtful experience.

¶57 We must never shrink from ordering a new trial when a defendant has been prejudiced by the violation of

fundamental constitutional rights. Conversely, if a defendant cannot show prejudice from the violation of a constitutional right, we should not order a new trial. This is such a case, and I therefore dissent.

¶58 In *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012) and *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012), a majority of this court held that in-chambers voir dire without a *Bone-Club* analysis is reversible error on direct appeal. *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). But it is a completely different question whether the same error requires us to grant relief in a personal restraint petition (PRP). Our PRP procedures reflect a crucial and enduring belief in the importance of finality, recognizing that collateral relief degrades the prominence of the trial and sometimes costs society the right to punish admitted offenders. It is for this very reason that we require personal restraint petitioners to demonstrate prejudice as a prerequisite to relief. This burden exists as a matter of PRP procedure in all cases, regardless of the nature of the underlying error alleged by the petitioner.

¶59 The lead opinion would discard this burden entirely for public trial errors, ignoring the unique procedural situation of a PRP and treating the public trial right as a trump card annulling the principles of finality long enshrined in our PRP procedures. Indeed, the lead opinion's extension of *In re Personal Restraint Petition of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), to this case (and seemingly to *any* public trial violation) collapses the distinction between direct and collateral review for these cases by equating the two as long as the defendant says the magic words: ineffective assistance of appellate counsel. This not only strains our notions of what is fair in the criminal justice system but ignores our decision in *In re Personal Restraint of St. Pierre*, 118 Wn.2d 321, 823 P.2d 492 (1992), which says that even a presumptively prejudicial error will not necessarily be treated as such on collateral review. It also invites an onslaught of PRPs from petitioners like Morris

who can identify anything in their trial record that could conceivably be labeled a violation of the right to a public trial. Until Morris can demonstrate some prejudice to the outcome of his case, I would deny collateral relief. On the other issues before the court in this case, I agree with the lead opinion.

I. A new trial should not be automatic when a public trial violation is raised for the first time on collateral review

¶60 Ordinarily, when a personal restraint petitioner alleges a constitutional violation, the petitioner must "satisfy [the] threshold burden of demonstrating actual and substantial prejudice." *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990). We have held in our public trial cases that on direct appeal, violations of the public trial right are presumed prejudicial. *State v. Strode*, 167 Wn.2d 222, 231, 217 P.3d 310 (2009) (plurality opinion); *State v. Easterling*, 157 Wn.2d 167, 181, 137 P.3d 825 (2006). If this case were before us on direct review, those cases would be relevant. But we have never held that the presumption of prejudice that attaches on direct appeal eliminates the petitioner's wholly separate burden to show prejudice on collateral review. In fact, in *St. Pierre*, we held that errors that are presumed prejudicial on direct appeal will not necessarily be presumed prejudicial on collateral review. 118 Wn.2d at 328-29. We held that a "higher standard" must be met before a presumption of prejudice attaches on collateral review. *Id.* at 329. Specifically, to meet this higher standard, a constitutional violation must give rise to a "conclusive presumption of prejudice." *Id.* at 328.

¶61 This reflects the fact that collateral review is not a substitute for direct appeal. An error that justifies reversal on direct review will not necessarily justify reversal on collateral attack. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 823-24, 650 P.2d 1103 (1982). This proposition is universally accepted both in Washington and in the federal

courts. *See id.* at 824 (" 'The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.' " (quoting *United States v. Addonizio,* 442 U.S. 178, 184, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979))); *Brecht v. Abrahamson,* 507 U.S. 619, 633, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) ("The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence."). The reasons for this difference are equally well recognized: "Collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders. These are significant costs and they require that collateral relief be limited in state as well as federal courts." *Hagler,* 97 Wn.2d at 824 (citing *Engle v. Isaac,* 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).

¶62 We reaffirmed these necessary limits in *St. Pierre.* 118 Wn.2d at 328-29. There, we held that the "higher standard" on collateral review is met, in the absence of an actual showing of prejudice, only where, in light of the essential purpose of the constitutional right at issue, a violation of the right would necessarily prejudice the defendant. *Id.*; *see also In re Pers. Restraint of Delgado,* 160 Wn. App. 898, 910, 251 P.3d 899 (2011) ("Where the essential purpose of a constitutional protection can be satisfied in a collateral proceeding without a per se prejudice rule, such a rule should not be adopted." (citing *St. Pierre,* 118 Wn.2d at 328-29)). Thus, where the petitioner has not made the required showing of prejudice, we must analyze the error at issue under this standard. In *St. Pierre,* the right at issue was a criminal defendant's right to be apprised with reasonable certainty of the charges against him. *St. Pierre,* 118 Wn.2d at 329. A violation of that right is presumed prejudicial on direct appeal, but *St. Pierre* held that it would not be on collateral review. The court reasoned that the essential purpose of this right is to provide notice, and a defendant's right to notice is not necessarily prejudiced by a

defective charging document. On the other hand, *St. Pierre* cited several cases in which there *would* be a conclusive presumption of prejudice. *See In re Pers. Restraint of Richardson*, 100 Wn.2d 669, 679, 675 P.2d 209 (1983) (court's failure to inquire about a conflict of interest arising from joint representation gave rise to a conclusive presumption of prejudice); *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88-89, 660 P.2d 263 (1983) (invalid guilty plea automatically gave rise to a prima facie showing of prejudice). In these cases, the defendant was necessarily prejudiced by a constitutional violation in light of the essential purpose of the right at stake.

¶63 But the same is not true of in-chambers voir dire of 14 potential jurors. The purpose of the public trial right is to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005) (citing *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996) (citing *Waller v. Georgia*, 467 U.S. 39, 46-47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984))). None of these goals is necessarily jeopardized when counsel questions a handful of potential jurors in chambers in an attempt to encourage them to be more forthcoming about sensitive topics. This is particularly true where, as here, the defendant appeared to approve of the tactic and wanted to benefit from increased candor—Morris waived his right to be present during the questioning because he thought jurors would be more forthcoming in his absence. The defendant certainly *may* be prejudiced by in-chambers voir dire, but such prejudice is not "conclusive," nor should it be presumed. To conclude otherwise ignores the differences between direct and collateral review.

¶64 Like every other personal restraint petitioner, Morris is required to make a threshold showing of actual and substantial prejudice. Since he has not done so, we should deny relief.

184

II. This case is factually different from *Orange* and the
result in that case does not require a new trial here

¶65 By extending *Orange* beyond its facts, the lead
opinion equates direct and collateral review for any peti-
tioner claiming a public trial violation as long as they
remember to say "ineffective assistance of appellate coun-
sel." This is not only overly simplistic, it is wrong under the
law and virtually guarantees a flood of public trial PRPs.

¶66 Instead, we should recognize the reality of the situ-
ation, which is that this case is factually different from
*Orange* and not controlled by that case. In *Orange*, we found
that appellate counsel's failure to raise a public trial issue
was ineffective assistance of appellate counsel. In that case,
ineffective assistance of counsel was clear from the facts.
Here it is not. To show ineffective assistance of appellate
counsel, under the test set forth in *Strickland v. Washing-
ton*, the defendant has the burden to show (1) that counsel's
performance was deficient, meaning it "fell below an objec-
tive standard of reasonableness" based on consideration of
all the circumstances, and (2) resulting prejudice, meaning
that "there is a reasonable probability that, except for
counsel's unprofessional errors, the result of the proceeding
would have been different." 466 U.S. 668, 687-88, 669, 104 S.
Ct. 2052, 80 L. Ed. 2d 674 (1984); *Smith v. Murray*, 477 U.S.
527, 535-36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986)
(applying *Strickland* test to ineffective assistance of appel-
late counsel). There is a strong presumption that counsel
has rendered adequate assistance and has made all signifi-
cant decisions in the exercise of reasonable professional
judgment. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177
(2009). A " 'fair assessment of attorney performance re-
quires that every effort be made to eliminate the distorting
effects of hindsight, to reconstruct the circumstances of
counsel's challenged conduct, and to evaluate the conduct
from counsel's perspective at the time.' " *State v. Grier*, 171
Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting *Strickland*, 466
U.S. at 689).

¶67 In *Orange*, counsel's performance was deficient because it fell below an objective standard of reasonableness. Counsel failed to raise a public trial issue that was conspicuous in the record and that was developed at trial. The trial judge in that case closed the courtroom for between two and four days of voir dire over the objection of the defendant's family, who wished to observe the entire trial. *Orange*, 152 Wn.2d at 801-03. Defense counsel pursued the issue and objected on the record. *Id*. On appeal, appellate counsel did not raise the public trial right violation even though it was conspicuous in the record and raising it would have resulted in a new trial. Moreover, counsel did not raise the public trial issue even though it was well established at the time of the appeal that the public trial right extended to the closure at issue, a total closure of voir dire. *See id*. at 804-05 (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)). Based on these facts, we held that failing to raise the public trial issue constituted ineffective assistance of appellate counsel. *Id*. at 814. And indeed, under those circumstances, appellate counsel should have known to pursue the issue and would have been remiss in making a conscious decision not to pursue it.

¶68 Morris's case is different. First, the public trial violation was not conspicuous in the record. There was no objection at trial to in-chambers voir dire, unlike the contemporaneous objection in *Orange*, and the issue was in no way developed below. In fact, the opposite is true: the conduct of Morris and his attorney suggests that both approved of the closure and sought to benefit by it. Morris agreed to waive his right to be present during in-chambers questioning because he thought jurors would be more forthcoming if he were not in the room. Unlike *Orange*, it is not clear under these facts that counsel would be deficient in failing to develop the issue on appeal. Second, and perhaps more importantly, it was not at all clear at the time of Morris's appeal that the public trial issue would be a

winning issue on appeal or that it should even be pursued. It may seem clear with the benefit of hindsight after *Strode*, 167 Wn.2d 222, but before *Strode* this court had never held that partial chambers voir dire would violate the public trial right. Morris's appeal was decided four years before *Strode*, so it is unlikely that Morris's appellate counsel was constitutionally deficient for failing to raise and develop what may have been a novel legal argument at the time. This is especially true in light of the fact that in-chambers voir dire appeared to be a common practice before *Strode*. *See* Lauren A. Rousseau, *Privacy and Jury Selection: Does the Constitution Protect Prospective Jurors from Personally Intrusive Voir Dire Questions?*, 3 RUTGERS J.L. & URB. POL'Y 287, 311 (2006) (The author surveyed 18 federal judges. "Virtually all" of them allowed potential jurors to answer intrusive or embarrassing questions "privately at the bench or in chambers, with only the judge, the court reporter, and the opposing counsel present."). Morris's attorney either decided not to raise the public trial issue in this case as a strategic matter or else he did not notice it because it was not conspicuous in the record and the case law was undeveloped. Either way, his performance was not deficient. We do not require appellate counsel to be perfect. Nor do we require appellate counsel to raise every nonfrivolous claim on appeal. Instead, we seek to eliminate hindsight bias by employing a presumption that counsel's performance was not deficient.

## III. Conclusion

¶69 The right to a public trial is not a magic wand granting new trials to all who would wield it. Openness is a crucially important value in our criminal justice system, but so is finality. It does not serve the interests of justice to reopen this long-decided case, requiring a young girl to relive old traumas and granting a windfall new trial to a man convicted of sexually molesting his daughter. We require personal restraint petitioners to show actual and

substantial prejudice because we value finality and seek to avoid outcomes of this nature. Morris should be required to meet that burden just like every other personal restraint petitioner.

C. JOHNSON and J.M. JOHNSON, JJ., concur with WIGGINS, J.