FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG 13 AM 8: 57

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76357-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELEANOR ANGIE ESTRADA, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 13, 2018 |

SCHINDLER, J. — A jury convicted Eleanor Angie Estrada of attempted residential burglary. Estrada seeks reversal. Estrada claims the court abused its discretion by denying the motion in limine on fingerprint evidence and violated her right to due process by instructing the jury on the statutory inference of intent. We affirm.

FACTS

Heather and Bradley Boren live with their three children on 2.25 acres in Enumclaw. The two-story house is located at the end of a gravel road. The house has glass windows that slide left to right. The exterior window screens are attached from the inside with tabs.

The family left the house early on November 23, 2014 for an all-day soccer tournament. Because there had been "some break[-ins] in the neighborhood," the Borens made sure "that everything was locked up." The family returned home late that

night. The children walked inside the house and "headed up the stairs." The children noticed the exterior screen on the front window over the stairs was bent and partially detached from the window. Heather noticed "smudges" on the windows. Bradley turned on the back porch lights and went outside. Bradley found the "large ladder" he keeps near "the back of the shop was propped up against the back of the house" by a second-story bedroom window. The exterior screen of the upstairs bedroom window had been removed and damaged and was "on the roof." The exterior screen of an upstairs bedroom at the front of the house was also "bent" and partially detached from the window.

Heather called 911. King County Sheriff Deputy Lucas Tarp responded to the 911 call. Deputy Tarp saw the ladder "leaned up against the roof of the house" in the backyard and the "damaged window screens."

Washington State Patrol Detective Tim Hanson went to the Boren house the next day. Detective Hanson saw fingerprints on "three different windows, two on the front of the house and one on the back." Detective Hanson collected "ten different prints" from the three windows, including fingerprints and left and right palm prints. Washington State Patrol Crime Laboratory (WSPCL) forensic scientist Scott Redhead identified eight useable prints as belonging to Eleanor Estrada.

The State charged Estrada with attempted residential burglary. Estrada pleaded not guilty.

Heather Boren, Deputy Tarp, Detective Hanson, Detective Steve Reeves, and WSPCL forensic scientist Redhead testified at trial.

WSPCL forensic scientist Redhead testified about his training and experience. Redhead stated he analyzes fingerprints in "approximately 25 to 30 cases a month." Since 2001, he has analyzed fingerprints in 3,500 to 4,000 cases. Redhead testified the "unique entity of the fingerprint is the features, . . . whether it's a ridge that starts or stops or splits into two, how far apart it is from the next one, and then the spacial relationship of these on multiple ridges." Redhead did not know of "any cases of two people having the same fingerprints." He testified "all 8 useable prints" collected from the Boren house belonged to Eleanor Estrada. Redhead testified that 3 different latent prints matched Estrada's right middle finger, 2 matched her right index finger, 2 matched her right palm, and 1 matched her left palm. Two other WSPCL forensic scientists independently verified the analysis.

On cross-examination, Redhead admitted there is "no set standard" in comparing "two fingerprints that are next to each other." Redhead conceded that the 2009 National Research Council of the National Academy of Sciences report (NRC report) showed the Federal Bureau of Investigation incorrectly identified a suspect using fingerprint analysis and that "people make mistakes."

Detective Steve Reeves testified that he interviewed Estrada approximately three weeks after the attempted burglary. Estrada told Detective Reeves that she "had been staying in the Enumclaw area." When Detective Reeves showed Estrada photographs of the Boren house, Estrada "denied recognizing that home" and denied "trying to burglarize that house." Estrada said she "had no idea where that house was."

The court instructed the jury on attempted residential burglary. Jury instruction 7 states, "A person commits the crime of residential burglary when he or she enters or

3

remains unlawfully in a dwelling with intent to commit a crime against a person or property therein." Jury instruction 11 states, "A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." Jury instruction 12 states, "A person commits the crime of attempted residential burglary when, with intent to commit that crime, he or she does any act that is a substantial step toward the commission of that crime."[1] Without objection, the court also instructed the jury on the statutory inference of intent.

The to-convict jury instruction states:

> To convict the defendant of the crime of attempted residential burglary, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about November 23, 2014, the defendant did an act that was a substantial step toward the commission of residential burglary;
> (2) That the act was done with the intent to commit residential burglary; and
> (3) That the act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.[2]

During closing argument, neither the State nor the defense mentioned the statutory inference jury instruction. The State argued the evidence established Estrada was guilty of attempted residential burglary.

> [W]e're talking about a substantial step. And there's evidence of substantial step as soon as that ladder gets put against the house. Right

---

[1] Jury instruction 9 states, "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime."

[2] The court also instructed the jury on the lesser included crime of criminal trespass in the second degree. To convict Estrada of criminal trespass in the second degree, the State had to prove Estrada "knowingly entered or remained in or upon the premises of another."

there we have substantial step. That's not knocking on the door to say hello. . . .

But that's not where it ends. Then we have the . . . damaged screens. Ms. Boren testified that the screens were removed from the inside which makes sense because that's how most screens are removed, from the inside. But when you go through the outside to try to get some screens open you end up damaging them.

The jury found Estrada guilty of attempted residential burglary. With an offender score of 9, the court imposed a special drug offender sentencing alternative sentence.

## ANALYSIS

Estrada seeks reversal, arguing (1) the court erred in denying the motion to limit the fingerprint testimony and (2) the court violated her right to due process by instructing the jury on the statutory inference of intent.

### 1) Fingerprint Testimony

Before WSPCL forensic scientist Redhead testified, the defense asked the court to instruct the witness to "steer clear of the term absolute match or to preface that his match is his belief, based on his training and experience." The prosecutor stated, "I don't plan on asking about an absolute match." The prosecutor argued Washington case law does not prohibit a forensic scientist who examines and compares latent fingerprints from testifying that the fingerprints "match" an individual.

The court instructed the prosecutor to "avoid any kind of use of the term absolute match." The court ruled the prosecutor could "ask the witness whether or not there was a match or the witness will be able to testify that there was a match. Any objection would go to the weight."

Estrada contends the court erred by allowing the WSPCL forensic scientist to testify that the latent fingerprints obtained from the windows at the Boren residence

"matched" Estrada. We review a trial court's decision on expert witness testimony for abuse of discretion. In re Pers. Restraint of Morris, 176 Wn.2d 157, 168, 288 P.3d 1140 (2012). Expert testimony is admissible if the expert is qualified, relies on generally accepted theories in the scientific community, and the testimony would be helpful to the trier of fact. ER 702; Morris, 176 Wn.2d at 168-69. A trial court abuses its discretion if the decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Gentry, 183 Wn.2d 749, 761, 356 P.3d 714 (2015). " 'Expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading.' " State v. Morales, 196 Wn. App. 106, 122-23, 383 P.3d 539 (2016) (quoting State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011)), review denied, 187 Wn.2d 1015, 388 P.3d 483 (2017).

Washington has a "long history" of admitting fingerprint identification evidence. State v. Pigott, 181 Wn. App. 247, 249, 325 P.3d 247 (2014). WSPCL forensic scientists routinely testify about whether latent fingerprints "match" the fingerprints of a defendant. See, e.g., State v. Wade, 186 Wn. App. 749, 761, 346 P.3d 838 (2015); State v. Lizarraga, 191 Wn. App. 530, 549, 364 P.3d 810 (2015).

WSPCL forensic scientist Redhead testified extensively about his training, experience, and the process to analyze fingerprints. Redhead tested eight "useable prints." Redhead analyzed the latent prints and compared the latent prints to the finger and palm prints of Estrada. Without objection, Redhead testified that he "identified them all to the same person, Eleanor Estrada," and "[b]ased on [his] training and experience," Redhead stated, "I believe I made a correct identification."

Relying on the 2009 NRC report, Estrada argues latent fingerprint analysis is unreliable. In Pigott, we considered the 2009 NRC report and rejected the same argument. We held that because "the reliability of fingerprint identification has been tested" and "routinely subjected to peer review," the only question is whether the witness is qualified as an expert and whether the testimony would be helpful to the trier of fact. Pigott, 181 Wn. App. at 251. We adhere to our decision in Pigott and conclude the court did not abuse its discretion in allowing WSPCL forensic scientist Redhead to testify that the latent finger and palm prints matched Estrada.

2) Statutory Inference Jury Instruction

Estrada contends the court violated her right to due process by instructing the jury on the statutory inference of criminal intent for burglary. Due process requires the State to prove every element of a charged offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Bencivenga, 137 Wn.2d 703, 706, 974 P.2d 832 (1999).

The State charged Estrada with attempted residential burglary. A person commits residential burglary when he or she enters or remains unlawfully in a dwelling with the intent to commit a crime against property. RCW 9A.52.025(1). A person is guilty of attempted residential burglary if, with intent to commit the principal crime, she commits an act constituting a "substantial step toward" its commission. RCW 9A.28.020(1); Bencivenga, 137 Wn.2d at 707. A "substantial step" means more than "mere preparation." State v. Wilson, 158 Wn. App. 305, 316-17, 242 P.3d 19 (2010).

RCW 9A.52.040 allows the jury to consider an inference of criminal intent for burglary. RCW 9A.52.040 states:

In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

Without objection, the court instructed the jury on the statutory inference of intent. Jury instruction 10 states:

A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

In State v. Brunson, 128 Wn.2d 98, 105-06, 905 P.2d 346 (1995), the Washington Supreme Court held this jury instruction creates "a permissive inference," not a "mandatory" presumption, because the language in the instruction is "clearly discretionary" and allows the trier of fact to reject the inference as it sees fit.

Estrada cites the comment to 11A Washington Practice: Washington Pattern Jury Instructions: Criminal (WPIC) 60.05 and State v. Jackson, 112 Wn.2d 867, 774 P.2d 1211 (1989), to argue the court erred in giving the instruction on statutory inference. See WPIC 60.05 cmt. 3 at 16 (4th ed. 2016). The WPIC 60.05 comment cites Jackson to state, "This instruction should not be given in an attempted burglary case." Cmt. 3 at 16.

In Jackson, the Supreme Court held the court erred in giving a statutory inference instruction because there was no evidence of entry and the instruction varied from the text in WPIC 60.05 by adding the word "attempted." Jackson, 112 Wn.2d at 876; see also Bencivenga, 137 Wn.2d at 707. The court also held the presumption "is

only permissible when no more than one conclusion can be drawn from any set of circumstances. An inference should not arise where there exist other reasonable conclusions that would follow from the circumstances." Jackson, 112 Wn.2d at 876. The court states, "WPIC 60.05 may be given as a proper instruction in a burglary case. However, where the State pleads and proves only attempted burglary, as here, this instruction is improper." Jackson, 112 Wn.2d at 876.

In Brunson, the court held that the permissive inference allowed by the jury instruction was not the sole proof of criminal intent and that the circumstantial evidence was sufficient for the jury to find the defendant intended to commit a crime, regardless of the inference. Brunson, 128 Wn.2d at 109. The evidence against one defendant showed he attempted entry through a kitchen window, he had an "implausible" excuse that he simply wanted to use the phone, and the kitchenware from inside the house was found outside in the yard. Brunson, 128 Wn.2d at 109, 102.

In State v. Drum, 168 Wn.2d 23, 225 P.3d 237 (2010), the Washington Supreme Court concluded that when a permissive inference is the " 'sole and sufficient proof of an element,' " the presumed fact must flow beyond a reasonable doubt from the proven fact so that the prosecution does not " 'circumvent its burden of persuasion.' " Drum, 168 Wn.2d at 35-36[3] (quoting Brunson, 128 Wn.2d at 107). But "[o]n the other hand, where the inference is only part of the state's proof, the presumed fact must flow more likely than not from a proven fact." Drum, 168 Wn.2d at 36 (citing Brunson, 128 Wn.2d at 107).

---

[3] Internal quotation marks omitted.

Here, the statutory inference is not the sole proof of intent, and unlike in <u>Jackson</u>, there is evidence of entry. Heather Boren testified the exterior screens are attached with tabs to the sliding glass windows and can only be removed "from the inside." When the Borens returned home, the screen on the front window over the stairs was partially pried off and bent. The ladder was "propped up against the back of the house" near a second-story bedroom window. The exterior screen of the back upstairs bedroom window was removed and damaged. The screen of an upstairs bedroom at the front of the house was bent and hanging off the window. The police found a number of latent fingerprints and palm prints on the glass of the three sliding windows. There is no other reason Estrada would use a ladder to forcibly remove the exterior screens and leave her finger and palm prints on the window panes other than to attempt to gain entry. Contrary to Estrada's denial, the prints matched Estrada.

<u>State v. Berglund</u>, 65 Wn. App. 648, 829 P.2d 247 (1992), is analogous. In <u>Berglund</u>, we held the court did not err by instructing the jury on the statutory inference in an attempted burglary case where fingerprints on the inside of a double pane window could not be made without breaking the exterior pane. <u>Berglund</u>, 65 Wn. App. at 653.

The intent to commit a crime may be inferred if the defendant's conduct and the facts and circumstances plainly indicate such an intent as a matter of logical probability. <u>State v. Cordero</u>, 170 Wn. App. 351, 368, 284 P.3d 773 (2012); <u>Jackson</u>, 112 Wn.2d at 876. Unlike in <u>Jackson</u>, the only reasonable conclusion from the facts and circumstances is that Estrada forcibly removed the exterior screens to access the windows to commit the crime of residential burglary.

Because the statutory inference is only part of the State's proof on intent, we conclude the court did not violate Estrada's right to due process by instructing the jury on the statutory inference of criminal intent for the crime of residential burglary.

We affirm the conviction of attempted residential burglary.

_Schindler, J._

WE CONCUR:

_Andrus, J._          _Leach, J._