This opinion was filed for record
at 8:00 AM, on Sept. 25, 2014

Ronald R. Carpenter
Supreme Court Clerk

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **SEP 2 5 2014**

Madsen, C.J.
CHIEF JUSTICE

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 86216-8 |
| | ) | (consolidated with |
| Petitioner, | ) | No. 87259-7) |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY PIERCE SHEARER, | ) | En Banc |
| | ) | |
| Respondent. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HENRY GRISBY III, | ) | Filed  **SEP 2 5 2014** |
| | ) | |
| Respondent. | ) | |

OWENS, J. -- Defendants have the constitutional right to a public trial.

WASH. CONST. art. I, § 22. This foundational safeguard helps to ensure a fair trial,

deters misconduct and partiality, and provides accountability for our judicial system.

In 2012, this court reviewed a number of cases involving a defendant's constitutional

right to a public trial. *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012); *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012); *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012). In particular, we considered cases in which jurors were individually questioned in chambers rather than in public. *See Wise*, 176 Wn.2d at 7-8; *Paumier*, 176 Wn.2d at 32-33. We concluded that a defendant's right to a public trial applies to the jury selection process but that jurors can be questioned in private if the trial court finds that specific circumstances warrant closing the questioning to the public. *Wise*, 176 Wn.2d at 11-13; *Paumier*, 176 Wn.2d at 34-35. The trial court determines whether closing the courtroom is appropriate by analyzing the criteria outlined in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). If the trial court fails to engage in that analysis, closing the questioning to the public violates the defendant's right to a public trial. *Wise*, 176 Wn.2d at 12-13; *Paumier*, 176 Wn.2d at 35.

Our holdings in those 2012 cases control the outcome of the two cases we consider today. In the unrelated trials of Henry Grisby III and Gregory Shearer, the trial judges questioned a juror in private without making a finding that specific circumstances warranted closing the questioning to the public. This was a violation of both Grisby's and Shearer's right to a public trial.

The State asks us to overrule two key holdings from our 2012 cases on public trial rights. First, the State asks that we overrule our holding that a defendant's failure

to object to a closure at trial does not constitute a waiver of his or her public trial rights. Second, the State asks that we overrule our holding that public trial rights violations are structural error and thus prejudice is presumed when a public trial rights violation is shown. We will overrule our precedent only when it has been shown to be incorrect and harmful. The State has not made such a showing. Therefore, we apply the holdings from our 2012 cases here and find that the public trial rights of both Shearer and Grisby were violated when a portion of juror questioning was closed to the public without a finding that specific circumstances warranted the closure.

## FACTS

### *State v. Shearer*

Based on a violent domestic dispute with his girl friend, Shearer was charged with felony harassment and fourth degree assault. During voir dire, juror 7 indicated that she was a victim of and a witness to domestic violence but said she did not want to talk about it. The judge asked if she would be more comfortable discussing it in chambers, and she said yes. The trial judge asked if anyone present objected but did not conduct a *Bone-Club* analysis. No one objected, and the parties went into chambers for a seven-minute conference that was on the record. During the conference, juror 7 disclosed that her grandson had been killed by his father in the family home and that she felt her experience would affect her view of the case.

Defense counsel moved to dismiss juror 7 for cause. The State did not object, and the juror was excused.

The jury ultimately found Shearer guilty on both charges. He appealed, raising a number of claims, including that his public trial rights were violated when the court questioned one of the jurors in chambers. The Court of Appeals agreed that his public trial rights were violated and reversed his conviction without reaching the other issues. *State v. Shearer*, noted at 162 Wn. App. 1007, 2011 WL 2120054, at *3. The State petitioned this court for review of the public trial rights issue, which this court granted. *State v. Shearer*, 176 Wn.2d 1031, 299 P.3d 19 (2013). The case was consolidated with *State v. Grisby*, No. 87259-7.

*State v. Grisby*

Grisby was charged with delivery of a controlled substance. During voir dire for his trial, a question arose as to whether juror 18 had a prior criminal conviction that would disqualify him from jury service. The trial judge asked the attorneys and Grisby to come into chambers for a conference with juror 18. The judge did not ask whether anyone objected and did not conduct a *Bone-Club* analysis prior to the in-chambers conference. The conference lasted about five minutes, and there is no record of what occurred during the meeting. Subsequently, the defense used a

peremptory challenge on juror 18.[1] The trial proceeded, and Grisby was ultimately convicted.

Grisby appealed his conviction, contending that his article I, section 22 right to a public trial was violated when the trial court conducted a portion of voir dire in chambers without first engaging in a *Bone-Club* analysis. He also claimed that the closure violated article I, section 10, which requires that "[j]ustice in all cases shall be administered openly." WASH. CONST. art. I, § 10. The Court of Appeals reversed the conviction on the basis of his article I, section 22 claim but did not reach his article I, section 10 claim. *State v. Grisby*, noted at 167 Wn. App. 1005, 2012 WL 763116, at *1-3. The State petitioned this court for review, which this court granted. *State v. Grisby*, 176 Wn.2d 1031, 299 P.3d 19 (2013).

## ISSUES

1. Can Shearer and Grisby raise the public trial rights issue on appeal even though they did not object at trial?

2. Were these courtroom closures de minimis?

## ANALYSIS

Under the Washington State Constitution, defendants have the right to a public trial. WASH. CONST. art. I, § 22. However, this right is not absolute. *Wise*, 176

---

[1] The written transcript erroneously references juror 28, but both the petitioner and the respondent agree that the audio is clear that this peremptory challenge actually refers to juror 18 by both name and number.

Wn.2d at 9. There are often competing rights and interests that sometimes justify limiting public access to a trial. *Id.* Trial courts balance these competing interests by considering five criteria identified in *Bone-Club*. 128 Wn.2d at 258-59. Under *Bone-Club*, trial courts must (1) "name the right that a defendant and the public will lose by moving proceedings into a private room;" (2) "name the compelling interest that motivates closure;" (3) "weigh these competing rights and interests on the record;" (4) "provide the opportunity for objection; and" (5) "consider alternatives to closure, opting for the least restrictive." *Wise*, 176 Wn.2d at 10.

When a trial court properly engages in a *Bone-Club* analysis prior to limiting public access to a trial, we review the court's decision for abuse of discretion. *Id.* at 11. However, closing part of a trial to the public without considering the *Bone-Club* factors is error. *Id.* at 13. Such a violation of the public trial right is structural error presumed to be prejudicial. *Id.* at 14. And as we have held, failing to object at trial does not constitute a defendant's waiver of the public trial right. *Id.* at 15. In this case, the State asks us to reconsider these last two holdings.

1. *Shearer and Grisby Can Raise the Public Trial Rights Issue on Appeal Even Though They Did Not Object at Trial*

Our precedent is clear that defendants can raise public trial rights on appeal even if they did not object to a courtroom closure at trial. *Id.*; *Paumier*, 176 Wn.2d at 36-37; *State v. Strode*, 167 Wn.2d 222, 229, 217 P.3d 310 (2009); *State v. Easterling*, 157 Wn.2d 167, 173 n.2, 137 P.3d 825 (2006); *see State v. Brightman*, 155 Wn.2d

6

506, 517, 122 P.3d 150 (2005) ("[T]he defendant's failure to lodge a contemporaneous objection at trial did not effect a waiver of the public trial right."); *Bone-Club*, 128 Wn.2d at 257 ("Defendant's failure to object contemporaneously did not effect a waiver."). We base this rule on *State v. Marsh*, 126 Wash. 142, 217 P. 705 (1923). In *Marsh*, the defendant's trial was held entirely in private; on appeal, the defendant alleged a violation of his right to a public trial. *Id.* at 142-43. The court approvingly cited cases from other state Supreme Courts that concluded that public trial rights can be raised for the first time on appeal, and concluded the same. *Id.* at 146-47 (quoting *State v. Hensley*, 75 Ohio St. 255, 266, 79 N.E. 462 (1906); *People v. Yeager*, 113 Mich. 228, 229-30, 71 N.W. 491 (1897)).

The State argues that the court should overturn the rule allowing defendants to raise public trial rights for the first time on appeal. We will not overturn an established rule absent a clear showing that the rule is incorrect and harmful. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). The State argues that this rule meets both criteria. First, the State contends that basing the rule on *Marsh* is incorrect because *Marsh* predated RAP 2.5 and because *Marsh* was a unique case where the entire trial was held in private and the defendant did not have an attorney. Second, the State contends that allowing the defendant to raise public trial rights for the first time on appeal is harmful because the trial court does not have the opportunity to correct the error, resulting in unnecessary retrial costs.

The majority of this court has repeatedly rejected these arguments, most recently in 2012. In a trio of cases released on the same day, a minority of the court made the same arguments the State makes here. *Sublett*, 176 Wn.2d at 123-28 (Madsen, C.J., concurring), 150-56 (Wiggins, J., concurring in result); *Paumier*, 176 Wn.2d at 52-56 (Wiggins, J., dissenting); *Wise*, 176 Wn.2d at 25 (J.M. Johnson, J., dissenting). However, in *Wise* and *Paumier*, the majority of this court rejected those arguments. *Wise*, 176 Wn.2d at 15; *Paumier*, 176 Wn.2d at 36-37. Similarly, in *Sublett*, a majority of the court did not sign the opinions authored by justices who made the same arguments the State makes here. *See* 176 Wn.2d at 123-28 (Madsen, C.J., concurring), 150-56 (Wiggins, J., concurring in result).

Instead, the court has held that requiring a contemporaneous objection from a defendant is tantamount to holding that a defendant's silence in the face of a courtroom closure constitutes a waiver of his or her public trial rights. *Wise*, 176 Wn.2d at 15. Waiver of a constitutional right must be knowing, voluntary, and intelligent. *See State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994) (and cases cited therein). As we have held, "[A]n opportunity to object holds no 'practical meaning' unless the court informs potential objectors of the nature of the asserted interests." *Bone-Club*, 128 Wn.2d at 261 (quoting *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 39, 640 P.2d 716 (1982)). There is no basis for concluding that simply

8

failing to object to a courtroom closure somehow demonstrates a knowing, voluntary, and intelligent waiver of a defendant's public trial rights.

Furthermore, if trial courts properly apply the *Bone-Club* structure that this court has put in place, this issue is moot. As we have held, it is the trial court's responsibility, not the defendant's, to ensure that the *Bone-Club* factors are considered prior to a courtroom closure. *Id.* at 261. Requiring the defendant to object to a courtroom closure would shift that burden away from the trial court, in conflict with our precedent.

Ultimately, the State does not present any new arguments regarding the existing rule. Absent a showing that our existing rule is incorrect and harmful, we will not overturn it. To do otherwise would undermine the purpose of stare decisis—to provide stability within the common law. *See Stranger Creek,* 77 Wn.2d at 653.

### 2. *These Courtroom Closures Were Not De Minimis*

"[I]t is well settled that the right to a public trial also extends to jury selection." *Brightman,* 155 Wn.2d at 515. Thus, privately questioning jurors during voir dire constitutes a trial closure, and a trial court is required to consider the *Bone-Club* factors prior to such questioning. *Wise,* 176 Wn.2d at 11-12. Here, the State acknowledges that the closures occurred in both cases but argues that the closures were de minimis. We reject this conclusion because it would conflict with our

precedent that public trial rights violations are structural error and not subject to a harmlessness standard.

In 2012, we held that "unless the trial court considers the *Bone-Club* factors on the record before closing a trial to the public, the wrongful deprivation of the public trial right is a structural error presumed to be prejudicial." *Id.* at 14. That is because such error "'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Id.* at 13-14 (alteration in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). We recognized that "any one deprivation of the public trial right will not likely devastate our system of justice or even necessarily cause a particular trial to be unfair (though of this latter part we can never be sure)" but that "letting a deprivation of the public trial right go unchecked affects 'the framework within which the trial proceeds.'" *Id.* at 17-18 (quoting *Fulminante*, 499 U.S. at 310). Furthermore, structural errors are presumed prejudicial because "'it is often difficult[t] to asses[s] the effect of the error.'" *Id.* at 17 (alterations in original) (internal quotation marks omitted) (quoting *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010)). It is especially hard to make a showing of harm resulting from public trial rights violations because the consequences are difficult to prove in any particular case. *Id.* Because of the nature of this type of error, we have held that public trial rights violations are "not subject to harmlessness analysis." *Id.* at 14. We

10

do not require defendants to show prejudice from public trial rights violations because "it is impossible to show whether the structural error of deprivation of the public trial right is prejudicial." *Id.* at 19.

This standard forecloses the possibility of de minimis violations.[2] In theory, a de minimis violation would involve a courtroom closure so brief that it did not result in prejudice to the defendant. But because of the nature of public trial rights, it is difficult (and often impossible) to show harm from individual violations. Thus, recognizing de minimis violations based on the lack of prejudice to the defendant would conflict with our precedent that public trial rights violations are structural errors and not subject to a harmlessness analysis. On this basis, we reject the State's argument that the closures in these two cases did not violate the defendants' public trial rights because they were de minimis.

However, we note that "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71 (plurality opinion). The public trial right attaches only to proceedings that implicate the core values that the right serves to protect. *Id.* at 72-73 (holding that an in-chambers meeting to resolve a jury question did not implicate the public trial right). And some minor exclusions of the public

---

[2] Even prior to the court's 2012 holding that public trial rights violations constitute structural error, "a majority of this court [had] never found a public trial right violation to be de minimis." *Easterling*, 157 Wn.2d at 180 (making this observation in 2006).

from trial proceedings will not constitute a public trial rights violation because they do not constitute a courtroom closure. *See id.* at 71-73; *see also State v. Lormor*, 172 Wn.2d 85, 87, 257 P.3d 624 (2011) (holding that the exclusion of the defendant's young daughter from court proceedings was not a courtroom closure). Thus, many of the closures that may appear de minimis will not actually result in public trial rights violations under our jurisprudence.

Nonetheless, to the extent that the State argues that the closure in Grisby's case was for a "ministerial or administrative matter," Suppl. Br. of Pet'r (Grisby) at 19, and thus did not implicate public trial rights, we disagree. The general purpose of the in-chambers discussion was to determine whether the juror had a felony conviction, but there is no record of what occurred in chambers. This situation is almost identical to *Paumier*, where the in-chambers discussions included personal health issues, criminal history, and familiarity with the defendant or the crime. 176 Wn.2d at 33. In that case, the court held that "individually questioning potential jurors is a courtroom closure requiring a *Bone-Club* analysis" and that "[f]ailure to conduct the *Bone-Club* analysis is structural error warranting a new trial because voir dire is an inseparable part of trial." *Id.* at 35. *Paumier* is controlling, and thus the trial court was required to conduct a *Bone-Club* analysis prior to closing the courtroom.

In addition to violating his public trial rights under article I, section 22, Grisby claims that the courtroom closure violated the public's right to open courts under

12

article I, section 10. The State contends that Grisby does not have standing to assert a violation under article I, section 10. Because we conclude that Grisby prevails on his public trial rights claim under article I, section 22, we do not reach the article I, section 10 issue.

## CONCLUSION

It is settled law that public trial rights violations can be raised for the first time on appeal, and the State has not shown that rule to be incorrect or harmful. Here, the public trial rights of both Shearer and Grisby were violated when a portion of jury selection occurred in chambers without a *Bone-Club* analysis. A majority of this court has never found a closure to be de minimis, and these closures were no exception. To call these closures de minimis would essentially require the defendants to show prejudice, in direct conflict with our precedent that public trial rights violations are structural error that are not subject to a harmlessness standard. We apply our recent, controlling precedent and affirm the Court of Appeals.

WE CONCUR:

Owens, J.

Stephens, J.

Fairhurst, J.

No. 86216-8

GORDON McCLOUD, J. (concurring)—I agree with the lead opinion that defendants Shearer and Grisby did not affirmatively waive their public trial rights, and that a new trial is therefore warranted in both cases. I write separately because I respectfully disagree with the lead opinion's suggestion that a defendant's waiver will not be effective unless the trial court also conducts a *Bone-Club*[1] analysis on the record. *See* lead opinion at 9. As I argued in my concurrence/dissent in the consolidated cases *State v. Frawley* and *State v. Applegate* (*Frawley*), No. 80727-2 (Wash. Sept. 25, 2014), a defendant can affirmatively waive his or her public trial right without the trial court engaging in a *Bone-Club* analysis. To be sure, the waiver must be affirmative and knowing to be effective. And a waiver cannot be accomplished by mere silence. But a defendant will be held to his or her waiver if it meets these prerequisites, even if the trial court failed to conduct a *Bone-Club* analysis. In *Frawley*, for example, I found the record was sufficient to support a

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

1

waiver where the defendant engaged in a discussion with his counsel, after which his counsel stated, "For the record, I have talked it over with Mr. Applegate. He has no objection and I have no objection to going back into chambers and asking these questions without the public hearing." Second Am. Verbatim Report of Proceedings (VRP *Applegate*) (Aug. 10, 2009) at 119.

By contrast, here, the record shows no similar affirmative waiver of the public trial right by the defendant. During voir dire, a juror was reluctant to answer personal questions in public. The following colloquy ensued:

> THE COURT: Would you be more comfortable if counsel and you and I were to meet in chambers so you can discuss it with us there?
>
> JUROR NO. 7: Yes.
>
> THE COURT: Is there anyone in this courtroom who feels the same? Okay.
>
> Is this [sic] anyone in this courtroom who would have any objection if we leave the courtroom for a moment? If the court reporter, counsel, and myself, and the defendant went into chambers to ask some questions of Juror Number 7 in private?
>
> Is there anyone here who would object at all to having that take place in that manner?
>
> Counsel, why don't we take a few moments and ask Juror 7 to join us in a moment?
>
> (Whereupon the following proceedings were had in chambers).

Verbatim Report of Proceedings (VRP *Shearer*) (Jan. 12, 2010) at 38-39. The trial court did not mention the public trial right, and neither the defendant nor his attorney made any statement on the record regarding waiver of that right. This record is very different from that in Applegate's case, where the defendant's attorney, after consulting with the defendant, expressly stated that the defendant did not object to proceeding "without the public hearing." VRP *Applegate* (Aug. 10, 2009) at 119.

A defendant can affirmatively waive his or her right to raise a courtroom closure issue on appeal or collateral attack. A proper affirmative waiver will bind the defendant even if the trial court does not conduct a *Bone-Club* analysis, as I explained in my opinion in *Frawley*. But the records in *Shearer* and *Grisby* show no affirmative waiver.[2] I therefore concur with the result reached by the lead opinion in this case.

---

[2] There is no question that the record in *Grisby* fails to show waiver. I agree with the lead opinion and Justice González's concurrence/dissent that a new trial is required in Grisby's case.

Gordon McCloud, J.

No. 86216-8

GONZÁLEZ, J. (concurring in part and dissenting in part)—I agree with much in the court's lead opinion today. Our constitution requires open, public trials. WASH. CONST. art. I, §§ 10, 22. Absent other constitutionally compelling purposes, such as a defendant's right to a fair trial or a juror's right to privacy and dignity, courtrooms must be open and justice must be administered openly. *Id.*; *State v. Lormor*, 172 Wn.2d 85, 93-94, 257 P.3d 624 (2011). A violation of article I, sections 10 of our state constitution is a reversible error in a criminal trial. *State v. Wise*, 176 Wn.2d 1, 16, 288 P.3d 1113 (2012) (citing *State v. Easterling*, 157 Wn.2d 167, 181, 137 P.3d 825 (2006)); *State v. Marsh*, 126 Wash. 142, 147, 217 P. 705 (1923). But our *constitution* does not demand we vacate convictions for every error, no matter how small. Nor should we.

From our very beginnings, Washington has rejected the common law rules under which even trivial trial error could result in reversal. *See, e.g., Ex parte Frederich*, 149 U.S. 70, 74-75, 13 S. Ct. 793, 37 L. Ed. 653 (1893) (citing *The King v. Bourne*, (1837) 7 Adol. & El. 58 (K.B.)). Instead, it has been the law here since

before our constitution was written that "court[s] shall, in every stage of an action, disregard any error or defect in pleadings or proceedings, which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." LAWS OF 1854 § 71, at 144 (currently codified at RCW 4.36.240). Violation of *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995) is error, but not, in my view, structural error. *See, e.g., State v. Momah*, 167 Wn.2d 140, 150-52, 217 P.3d 321 (2009). *But see Wise*, 176 Wn.2d at 13-15.

We should not turn *Bone-Club* into a shibboleth or into a magic incantation that transforms the constitutional complexion of a closure. It is merely a tool. It is a very useful tool for determining whether a courtroom may be closed consistent with our constitution, but not the only tool we have. We have our eyes. We have our judgment. We have our constitution itself.

In my view, a courtroom can be closed without violating the open courts provisions of our constitution when it is clear from the record that a compelling reason justified the closure, those present had the opportunity to object, the closure was the least restrictive means available to protect the compelling interests, the reasons to close the court outweighed the reasons not to, and the closure was no broader than necessary. *Momah*, 167 Wn.2d at 151-52; *Bone-Club*, 128 Wn.2d at 258-59.

I agree with this court and the court below that Grisby's conviction must be reversed. There is simply nothing in the record or our general experience that shows a

2

compelling reason justified taking the juror in question back into chambers. Nor does the record show that the judge gave those present the opportunity to object, that the closure was the least restrictive means available to protect some compelling interests, that the reasons to close the court outweighed the reasons not to, or that the closure was no broader than necessary.

The same is not true in Shearer's case. In Shearer's case, the compelling purpose is apparent: the potential juror's privacy and her unwillingness to discuss her family's tragedies in open court. *See Bone-Club,* 128 Wn.2d at 258. Exploring her experience with that sad tragedy was necessary to protect Shearer's right to an impartial jury. *Id.* The judge gave those present the opportunity to object. *Id.* It is apparent that the closure was the least restrictive means available to protect that compelling interest. *Id.* at 258-59. Our constitution does not demand that those called to serve on a jury recount their worst memories in open court. *Id.* at 259. The closure was no broader than necessary to protect both Shearer's right to an impartial jury and the juror's right to dignity and privacy.[1]

I respectfully concur in part and dissent in part.

---

[1] I am inclined to agree with the concurrence that defendants who knowingly and affirmatively waive their public trial rights may not raise the issue on review. No such waiver appears here.

González, J.

J.M.G., J.P.T.

Madsen, C.J.

No. 86216-8
(consolidated with No. 87259-7)

WIGGINS, J. (dissenting)—The lead opinion adheres to flawed precedent to affirm the Court of Appeals and reverse the convictions in these cases. First, it holds that Gregory Shearer and Henry Grisby III can raise a public trial violation on appeal even though they did not object at trial. Lead opinion at 6. Second, it holds that a public trial right violation is structural error so there is no such thing as a de minimis violation. *Id.* at 9-11. I respectfully dissent.

I agree with Justice González that "our *constitution* does not demand we vacate convictions for every error, no matter how small." Concurrence/dissent at 1. Thus, like Justice González, I would affirm Shearer's conviction, but I would do so specifically because Shearer had a chance to object but failed to do so and there has been no showing of actual prejudice arising from the alleged error. In addition, I write separately because I would affirm the conviction in *Grisby* for the same reasons—the alleged violation was not structural error, and Grisby did not object to the closures at trial, nor has he satisfied the requirements of RAP 2.5.

As I explain in my dissent in *State v. Paumier*, 176 Wn.2d 29, 45-48, 288 P.3d 1126 (2012) (Wiggins, J. dissenting), structural error analysis is appropriate only when applied to extraordinary circumstances that render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. When a public trial violation

is not structural error and a defendant does not object, RAP 2.5(a)(3) requires the defendant to show actual prejudice before he or she is entitled to relief.

Here, the errors were not structural. In both cases, counsel and the judge met with a single juror in chambers to discuss potentially sensitive issues. Thus, defendants, through their counsel, had the opportunity to question and excuse jurors for cause or peremptorily. Indeed, following the interviews, Shearer's defense counsel exercised a for-cause challenge to excuse juror 7 and Grisby's defense counsel exercised a peremptory challenge to excuse juror 18. The court has never explained why in-chambers questioning of a single juror on sensitive subjects falls into the class of constitutional errors that infect the entire trial, such as the complete denial of counsel, a coerced confession, a biased judge, or denial of self-representation at trial. It is even more difficult to see how the mere failure to conduct a *Bone-Club*[1] analysis at trial similarly infects the entire trial process or deprives defendants of "'basic protections'" such that "'no criminal punishment may be regarded as fundamentally fair.'" *Neder v. United States,* 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Rose v. Clark,* 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)). This is especially true when it appears that the defendant actually benefited from the questioning. Thus, I would hold that neither error was structural.

In addition, neither Shearer nor Grisby objected to the in-chambers questioning at trial and there is no indication that the limited questioning adversely impacted the

---

[1] *State v. Bone-Club,* 128 Wn.2d 254, 906 P.2d 325 (1995).

proceedings. We should not presume prejudice where, had the trial judge performed a *Bone-Club* analysis, there is every reason to believe that the trial court would have avoided voir dire in chambers or would have evaluated the proposed in-chambers proceeding under *Bone-Club* and concluded that it satisfied the *Bone-Club* factors. In either case, the conviction would almost certainly have been affirmed. Indeed, the voir dire process used by the trial court in these cases is similar to the process used in many Washington courts and the process endorsed in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 512, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984), wherein the United States Supreme Court held that the jury selection process must be open but that when dealing with sensitive matters, limited questioning could be conducted on the record in chambers with counsel present.

We must never shrink from ordering a new trial when the violation of fundamental constitutional rights has prejudiced a defendant. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 179-80, 288 P.3d 1140 (2012) (Wiggins, J., dissenting). But, if a defendant cannot show prejudice, we should not order a new trial. *Id.* Here, defendants and their counsel failed to object at trial to the in-chambers questioning of a single juror who, in both cases, was eventually dismissed by defense counsel. The limited in-chambers voir dire in these cases was not structural error, and on appeal, neither Grisby nor Shearer has shown any prejudice arising from the alleged closure. Thus, I would reverse the Courts of Appeal in both cases and affirm the convictions.

3

I dissent.

_Wiggins, J._