IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33141-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| IAN JONATHAN ANDERSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Ian Anderson appeals his conviction for possession of a stolen vehicle. He argues the trial court violated his right to a public trial and his right to be present at all critical stages when it directed a court staff member to speak with a venire juror outside of the courtroom to determine if his civil right to be a juror had been restored after his felony conviction. Mr. Anderson also argues the trial court abused its discretion by allowing evidence of his flight, resisting arrest, and being subdued by a stun gun, and this error was not harmless. Mr. Anderson further argues the trial court erred by imposing legal financial obligations (LFOs). In his statement of additional grounds for review (SAG), Mr. Anderson argues the State introduced irrelevant and prejudicial evidence at trial and also failed to prove he knew the vehicle was stolen. We disagree

with Mr. Anderson's constitutional, LFO, and SAG arguments. We agree that allowing evidence of his being subdued by a stun gun was an abuse of discretion, but determine the error to be harmless. We, therefore, affirm.

## FACTS

Bryan Dugdale had a green Nissan Maxima with Montana license plates. Mr. Dugdale did not use the car but kept it behind his apartment. Mr. Dugdale's father, a Montana resident, was the car's registered owner.

In June 2014, Mr. Dugdale arranged to sell the Maxima to his neighbor. Mr. Dugdale removed the registration from the car and locked it. On the morning of June 23, 2014, Mr. Dugdale's neighbor sent him a text asking where the Maxima was. It was then that Mr. Dugdale learned that the car was recently stolen, and he reported the theft to the Spokane Police Department.

On June 24, 2014, Spokane Police Sergeant Kurt Vigesaa was on patrol when he saw a green Maxima with Montana license plates. The sergeant recalled that a vehicle with a similar description had been reported stolen. He confirmed the car matched the one reported stolen and then followed the Maxima until backup could assist him. He saw the Maxima's driver turn into a parking lot and park the car. The sergeant then parked his patrol car behind the Maxima to prevent the driver from fleeing in the car.

2

Sergeant Vigesaa instructed the driver, later identified as Mr. Anderson, to remain in the car with his hands on the steering wheel. The sergeant told Mr. Anderson the Maxima had been reported stolen. Mr. Anderson replied he was just borrowing it.

When backup arrived, Sergeant Vigesaa instructed Mr. Anderson to step out of the car. The sergeant then instructed Mr. Anderson to turn and face the Maxima and sidestep toward the rear of the vehicle. Mr. Anderson complied with the sergeant's instructions. But when the sergeant instructed Mr. Anderson to place his hands behind his back, Mr. Anderson fled.

As Mr. Anderson fled past one of the officers, the officer grabbed him and forced him to the ground. Mr. Anderson continued to resist. Up to four officers assisted in trying to subdue him. The officers informed Mr. Anderson he was under arrest and to stop resisting. Mr. Anderson continued to struggle until an officer deployed a stun gun.

The State charged Mr. Anderson with one count of possession of a stolen motor vehicle. Prior to jury selection, each venire juror received an identification number. The State notified the trial court that venire juror 31 had a prior felony conviction, and it was unclear if the juror's civil rights had been restored so he could serve as a juror. The trial court suggested that a court staff member speak with juror 31 outside the courtroom and determine his status. The trial court further suggested, if juror 31 told the staff member

3

his rights had not been restored, or he was unsure, the trial court would excuse juror 31.

Neither the State nor Mr. Anderson objected to the trial court's suggestions. The court

staff member presumably spoke with juror 31, but a summary of the discussion was not

placed on the record. According to a clerk's notation, juror 31 was struck for cause.

The jury found Mr. Anderson guilty of possession of a stolen motor vehicle. At

sentencing, the trial court imposed LFOs on Mr. Anderson. These LFOs consist of a

$500 victim assessment fee, a $200 criminal filing fee, and a $100 deoxyribonucleic acid

(DNA) collection fee. The trial court stated it would waive these fines and costs but it

could not. Mr. Anderson appeals.

## ANALYSIS

A.    *Right to a public trial*

Defendants have a constitutional right to a public trial. U.S. CONST. amend. VI;

CONST. art. I, § 22. A violation of the public trial right can be raised for the first time on

appeal. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). Failure to object at trial

does not constitute a waiver of a defendant's public trial right. *State v. Shearer*, 181

Wn.2d 564, 569, 334 P.3d 1078 (2014). Violation of a defendant's public trial right is a

question of law reviewed de novo. *Wise*, 176 Wn.2d at 9 (quoting *State v. Easterling*,

157 Wn.2d 167, 173-74, 137 P.3d 825 (2006)).

4

The right to a public trial is not absolute. *Shearer*, 181 Wn.2d at 569. Competing rights and interests often require trial courts to limit public access to a trial. *Id.* Trial courts assess these competing interests by using the five factor analysis articulated in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). A trial court must consider the five *Bone-Club* factors on the record before closing the courtroom. *Wise*, 176 Wn.2d at 10. Closing the courtroom without considering the *Bone-Club* factors is structural error and is presumed to be prejudicial. *Shearer*, 181 Wn.2d at 569.

However, before determining if a public trial right violation has occurred, this court must first determine whether the court proceeding implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). The Washington Supreme Court has adopted the "experience and logic" test developed by the United States Supreme Court to determine if a court proceeding implicates the public trial right. *Id.* at 72-75. The "experience prong" asks "'whether the place and process have historically been open to the press and general public.'" *Id.* at 73 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The "logic prong" asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Press-Enterprise Co.*, 478 U.S. at 8). If both questions are answered yes, then the court proceeding implicates the public trial right. *Id.*

5

"[I]t is well settled that the right to a public trial also extends to jury selection." *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005). However, "the mere label of a proceeding is not determinative." *State v. Slert*, 181 Wn.2d 598, 604, 334 P.3d 1088 (2014). Recent Washington Supreme Court decisions demonstrate the individual questioning of jurors conducted outside open court during voir dire is a violation of a defendant's public trial right. *State v. Paumier*, 176 Wn.2d 29, 32, 288 P.3d 1126 (2012); *Shearer*, 181 Wn.2d at 566; *Wise*, 176 Wn.2d. at 5-6.

But more recent cases have drawn a distinction between individual questioning of jurors occurring before and after the start of voir dire. *See, e.g.*, *State v. Russell*, 183 Wn.2d 720, 722-33, 357 P.3d 38 (2015) (chambers work session, occurring before voir dire, to excuse jurors for statutory reasons did not implicate the public trial right); *Slert*, 181 Wn.2d at 604-08 (chambers discussion, occurring before voir dire, of answers to jury questionnaires and subsequent dismissal of jurors with knowledge of case did not implicate the public trial right); *State v. Wilson*, 174 Wn. App. 328, 331, 298 P.3d 148 (2013) (excusal of two jurors for illness-related reasons before voir dire began did not implicate the defendant's public trial right).

A defendant's public trial right does not apply to every aspect of jury selection. *Slert*, 181 Wn.2d at 604-05; *Wilson*, 174 Wn. App. at 338-40. Experience demonstrates

6

the public trial right historically has not attached to the dismissal of certain statutorily excused jurors. *Wilson*, 174 Wn. App. at 342-46. Also, given how a trial court and its agents have "broad discretion" to excuse members of the jury for administrative reasons, logic does not suggest public openness during pre-voir dire dismissals would in any way enhance the fairness of the criminal justice system. *Id.* at 346-47.

Here, a court staff person questioned venire juror 31 before the jury pool was sworn in and before voir dire began. The record is clear the trial court was concerned with only whether juror 31, a convicted felon, was statutorily eligible to serve.[1] Venire juror 31's dismissal was merely a pretrial administrative dismissal of a statutorily ineligible juror. Both *Slert* and *Wilson* indicate such administrative dismissals do not implicate a defendant's right to a public trial. We conclude Mr. Anderson's public trial right was not implicated under these facts.

B.    *Right to be present during all critical stages of trial*

Due process affords a criminal defendant the right to be present at all critical stages of trial. *State v. Jones*, No. 89321-7, 2016 WL 1594034, slip op. at 16 (Wash., Apr. 21, 2016) (quoting *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011)). Mr.

---

[1] RCW 2.36.070(5) provides that any person who has been convicted of a felony and has not had his or her civil rights restored is not eligible for jury service in Washington.

7

Anderson argues his right to be present was violated when the court staff member questioned venire juror 31 outside the courtroom.

An appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a). However, a party may raise an unpreserved claim for the first time on appeal if the claim concerns a manifest error affecting a constitutional right. RAP 2.5(a)(3). For such a claim to warrant review, the appellant must show, (1) the error is of constitutional magnitude, and (2) the error is manifest. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). To be "manifest," the defendant must show the claimed error had "practical and identifiable" consequences at trial. *Id.* at 99.

In *State v. Jones*, the alternate jurors were chosen by a random drawing during an afternoon recess while Martin Jones was not present. *Jones*, slip op. at 3-6. When court reconvened and the trial court announced the alternate jurors, neither party was surprised, confused, nor objected. *Id.* at 6. The *Jones* court held the defendant's failure to object at trial waived his right-to-presence challenge and the court declined to address its merits. *Id.* at 17.

Here, Mr. Anderson did not object to the trial court's suggested procedure for determining whether venire juror 31 could statutorily serve as a juror. Mr. Anderson's failure to object at trial strongly indicates he did not perceive the procedure as prejudicial.

8

We also fail to see any prejudice in the procedure. We therefore decline to address the merits of Mr. Anderson's right-to-presence challenge.

    C.    *Evidence of flight, resisting arrest, and being subdued by a stun gun*

Mr. Anderson argues the trial court erred when it denied his motion in limine to exclude evidence of his flight, resisting arrest, and being subdued with a stun gun.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). An abuse of discretion occurs if a trial court adopts a view no reasonable person would take. *Id.* at 669 (quoting *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)).

All relevant evidence is admissible unless its admissibility is otherwise limited. ER 402. Facts tending to establish a party's theory of the case will generally be found to be relevant. *State v. Mak*, 105 Wn.2d 692, 703, 718 P.2d 407 (1986). The threshold for relevance is very low, and minimally relevant evidence may be admitted by a trial court. *Salas*, 168 Wn.2d at 669 (quoting *State v. Gregory*, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006)).

Relevant evidence should be excluded by a trial court if the danger of unfair prejudice substantially outweighs its probative value. ER 403. Evidence likely to elicit

9

an emotional response rather than a rational decision carries a risk of unfair prejudice. *Salas*, 168 Wn.2d at 671. The burden of showing unfair prejudice is on the party seeking to exclude the evidence. *Carson v. Fine*, 123 Wn.2d 206, 225, 867 P.2d 610 (1994). Trial courts are given wide discretion in balancing the probative value of evidence against the danger of unfair prejudice. *Id.* at 225-26.

Evidence of flight is admissible if the trier of fact can reasonably infer the defendant's consciousness of guilt of the charged crime. *State v. McDaniel*, 155 Wn. App. 829, 854, 230 P.3d 245 (2010) (quoting *State v. Freeburg*, 105 Wn. App. 492, 497-98, 20 P.3d 984 (2001)). Such inferences are too attenuated if substantial time elapses between the defendant's criminal conduct and arrest, or if the defendant is unaware of the reason for his arrest. *United States v. Borders*, 693 F.2d 1318, 1324-27 (11th Cir. 1982).

Here, Mr. Anderson fled almost immediately after the arresting officer told him he was driving a stolen car. When deciding to admit the evidence of flight, resisting, and being subdued by a stun gun, the trial court stated:

> But this is a series of events where contacted by law enforcement the defendant initially tries to, well, he tries to flee at one point. He then has to be taken to the ground. He then continues to resist and cannot be handcuffed. Eventually, because the resistance is so extreme, he is tasered by one of the officers and then they're able to finally handcuff him. This all happens in a very short period of time when he's trying to flee the scene. I do think that's relevant. I do think its relevance outweighs any potential prejudice and I do think it should come into evidence.

10

Report of Proceedings (RP) at 125-26. In addition, evidence of flight and resisting was relevant because it tended to contradict Mr. Anderson's recent statement that he had borrowed the car. Because Mr. Anderson's flight and resisting occurred almost immediately after the arresting officer informed him he was driving a stolen car, a jury could reasonably infer consciousness of guilt of the charged crime. We hold that the trial court did not abuse its wide discretion in allowing the State to present evidence of flight and resisting.[2]

Having admitted evidence that it took four officers to subdue Mr. Anderson, there is almost no relevance to the fact an officer employed a stun gun to subdue him. Such evidence risks an emotional rather than a thoughtful response from a jury. The trial court's denial of this aspect of Mr. Anderson's motion in limine was an abuse of discretion.

But we are firm in our determination the error was harmless. Mr. Anderson's defense was he borrowed the car from a woman. This woman testified at trial. She testified she purchased the car from a person she never met before. The State's cross-

---

[2] Mr. Anderson argues consciousness of guilt was speculative because he had two outstanding warrants, and his flight and resistance were related to the warrants. Mr. Anderson's two outstanding warrants were mentioned during the motion in limine. But the connection between those warrants and his flight was not made on the oral record, and the written motion in limine is not part of the appellate record. Because we are unable to

11

examination of this witness made her story unbelievable. She testified she looked at the car, but did not notice the out-of-state plate, nor did she ask to look at the car's registration. She claimed to have received a bill of sale when she purchased the car. She admitted she had not seen the car since Mr. Anderson's arrest, but claimed to have the bill of sale in her possession.

> [Prosecutor:] Okay. And you have the bill of sale now?
> [Witness:] I do have the bill of sale.
> [Prosecutor:] . . . If the bill of sale were in the glove box of the car that you gave to Mr. Anderson to drive, how would you have it [now]?
> [Witness:] *That's a good question.*
> [Prosecutor:] Nothing further.

RP at 264 (emphasis added).

D.   *Imposition of LFOs*

Mr. Anderson argues the trial court erred by imposing LFOs against him. He argues when LFOs are imposed against a person without the ability to pay, they violate due process. The State counters with three responses: First, Mr. Anderson did not raise any LFO objection to the trial court, and this court therefore should refuse to consider this unpreserved error. Second, all of the LFOs imposed on Mr. Anderson are mandatory. Third, citing *State v. Blank*, 131 Wn.2d 230, 930 P.2d 1213 (1997), the State argues that constitutional concerns are not implicated until the State seeks to enforce payment. Mr.

verify this argument was made below, we will not consider it on appeal. RAP 2.5(a).

12

Anderson does not dispute his failure to object below or the mandatory nature of the

LFOs imposed. He instead responds that we should review and strike the LFOs because

such relief is consistent with *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

In *Blazina*, the court exercised its discretion under RAP 2.5(a) to review the

defendant's argument first raised on appeal that the trial court violated RCW 10.01.160(3)

when it imposed *discretionary* LFOs without considering his ability to pay. *Blazina*, 182

Wn.2d at 830. Contrary to Mr. Anderson's argument, *Blazina* does not encourage either

review or reversal of *mandatory* LFOs. We, therefore, exercise our discretion and decline

to review Mr. Anderson's unpreserved claimed LFO error.

SAG ISSUE 1: *Whether the trial court improperly admitted evidence concerning two duplicate keys recovered at scene of the crime*

Mr. Anderson does not specify exactly which witness or what keys were allegedly

used prejudicially by the State. However, during the trial Mr. Dugdale and Sergeant

Vigesaa testified about the contents of the Maxima when they recovered it. Mr. Dugdale

testified one of the items the police recovered from the Maxima was a reproduction of the

key to the Maxima made without his consent. Sergeant Vigesaa confirmed with Mr.

Dugdale the reproduced key was not Mr. Dugdale's. The police found the key along with

a mechanic's check sheet stating the key was for the Maxima.

13

Sergeant Vigesaa testified he recovered two other reproduced vehicle keys at the scene. He explained it is very common to find multiple sets of keys (some shaved and some unshaved) when investigating stolen motor vehicles. Sergeant Vigesaa based his explanation on the approximately 500 stolen motor vehicle investigations he has been involved in as a police officer. He further explained, based on his experience, it is common practice for motor vehicle thieves to have multiple sets of keys to multiple vehicles, and it is possible for someone to have a key made for a stolen vehicle. On cross-examination, Sergeant Vigesaa testified that as many as 60 percent of stolen vehicle cases involve shaved keys, and as many as 50 percent involve damage to a vehicle (e.g. punctured ignition, removed stereo, etc.). Defense counsel noted Sergeant Vigesaa's report did not include information about any shaved keys or damage to the Maxima.

All relevant evidence is admissible unless its admissibility is otherwise limited. ER 402. Relevant evidence may be excluded by a trial court if the danger of unfair prejudice substantially outweighs the probative value. ER 403. Facts tending to establish a party's theory of the case will generally be found to be relevant. *Mak*, 105 Wn.2d at 703. Evidence likely to elicit an emotional response rather than a rational decision carries a risk of unfair prejudice. *Salas*, 168 Wn.2d at 671. The State used the keys at trial to show that Mr. Anderson was guilty of possession of a stolen motor vehicle. Sergeant

14

Vigesaa never used this evidence to assert that Mr. Anderson had stolen other vehicles or was a career criminal. There is no evidence the use of the keys at trial elicited an emotional reaction from the jury. On cross-examination, defense counsel effectively countered Sergeant Vigesaa's testimony by noting that he did not indicate in his report that a shaved key was recovered at the scene or that the Maxima was damaged, despite earlier testimony that shaved keys or damage to a vehicle occurs in 50 percent to 60 percent of stolen vehicle cases. The evidence of the keys was not overly prejudicial and was relevant as part of the State's case against Mr. Anderson for the crime of possessing a stolen motor vehicle. We find no abuse of trial court discretion.

SAG ISSUE 2: *Whether the State presented sufficient evidence to prove the knowledge element of the crime charged*

Mr. Anderson argues the State failed to prove he knew the car was stolen. In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and

15

interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). This court's role is not to reweigh the evidence and substitute its judgment for that of the jury. *See State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because the jurors observed the witnesses testify firsthand, this court defers to the jury's resolution of conflicting testimony, evaluation of witness credibility, and the decision regarding the persuasiveness and the appropriate weight to be given the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

A person is guilty of a class B felony, possession of stolen vehicle, if he or she possesses a stolen motor vehicle. RCW 9A.56.068(1). The statute lacks a "knowledge" element. But we infer "knowledge" is an element because we doubt the legislature intended to incarcerate someone up to 10 years for driving a car he did not know was stolen. *See* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, 77.21 cmt. (3d ed. 2008) (The legislature must have intended "knowledge" to be an element of the offense, or else the class B felony would be a strict liability offense

16

for simple possession.).

At trial, the State offered the following evidence to show Mr. Anderson acted with knowledge that the car was stolen. Mr. Anderson told the sergeant he had borrowed the car, and the woman who testified did a very poor job corroborating Mr. Anderson's story. A jury could infer that if the witness's story was false, so was Mr. Anderson's. Also, Mr. Anderson fled and resisted arrest soon after the sergeant told him he was driving a stolen car. Viewing the evidence in the light most favorable to the State, a rational trier of fact could find, beyond a reasonable doubt, Mr. Anderson knew the car was stolen.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

17