

**FILED**
**APRIL 12, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34899-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK WAYNE KARAS, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Patrick Wayne Karas seeks reversal of his convictions for second degree burglary and third degree theft, asserting his public trial right was violated by an unrecorded chambers conference in which the trial court heard an ER 615 motion to exclude witnesses and a motion in limine. We hold that the public trial right does not apply to rulings excluding witnesses under ER 615 but did apply to a motion in limine that had been raised before testimony began and could easily have been heard in the open courtroom. Reversal and remand for a new trial is required.

PROCEDURAL BACKGROUND

Facts underlying the charges against Patrick Karas for the most part are unimportant to this appeal. On the first morning of trial in September 2016, the jury was

No. 34899-7-III
*State v. Karas*

selected and was read the pattern advance oral instruction.  The trial court then told

jurors:

> Now, folks, we're going to take up some matters, outside your
> presence.  And, then, we'll have you back here, after lunch, for opening
> statements.
> And let's have you back in the jury room, at 1:30, and we'll try to
> take up as quickly as we can after 1:30.

Report of Proceedings (RP) (Apr. 14, 2016) at 81.  The trial court cautioned jurors

against discussing the case with anyone and told them the bailiff was then going to "show

you where your new home away from home is." *Id.* at 82.

Although not reflected in the report of proceedings, a chambers conference then

took place.  The report of proceedings takes up again with proceedings in open court, but

outside the presence of the jury:

> THE COURT:  Okay.  For the record, Counsel met in chambers, and
> discussed only legal issues.  And we did discuss some motions.
> One was a motion to exclude witnesses, by the defendant.  The
> Court granted that motion.
> And the Court was advised that the State will have Officer Josh
> Mathena as its representative, to be seated at counsel table.  Everyone else
> is excluded.
> There's also a motion, by the defendant, to keep out testimony by—
> who was the officer?  Corulli?
> [DEFENSE COUNSEL]:  Corulli.
> THE COURT:  Corulli, who, apparently, in his report, indicates
> some statements made by a cashier, at a business across from the alleged
> victim's business.  And the Court granted that motion.  Officer Corulli
> can't talk about what the cashier said.
> It was also indicated that the alleged victim had that conversation
> with the cashier.  And the Court did not grant a motion in limine,

> preventing the alleged victim from talking about what he said to the cashier.
>
> And, the way it was presented, what the cashier said to him, was not being offered to prove the truth of the matter asserted.
>
> So counsel can renew the objection to that, if you want. But, right now, it sounds like that's the route we got to go, at this point in time.
>
> Anything else we need to put on the record?
>
> (Discussion had off record.)

*Id.* at 82-83. The report of proceedings next indicates, "Lunch recess taken." *Id.*

The chambers conference was not recorded. Our record does not contain court minutes or any other information on how long the chambers conference lasted.

The report of proceedings picks up again after the lunch recess, when the proceedings continued with opening statements.

At the close of trial, the jury found Mr. Karas guilty of second degree burglary and third degree theft. Following entry of the felony judgment and sentence, Mr. Karas appealed. For the first time, he alleged that the chambers conference on the morning of the first day of trial was a public trial violation.

Review of the record on appeal reveals only one other filing that sheds light on the subject matter of the unrecorded argument of the motion in limine: the transcript of an earlier CrR 3.5 hearing. During that hearing, an investigating officer testified that Mr. Karas might have overheard the victim of the burglary and theft tell a cashier at a nearby market about where he kept cash. According to the officer, the cashier asked the victim whether he kept cash in order to make change for customers and the victim said he did,

and that he kept it in the office of his shop. The cashier later told the victim that Mr. Karas was in the market and within earshot when they talked about where the cash was located. At the CrR 3.5 hearing, the officer testified that it was when he confronted Mr. Karas about this information that Mr. Karas agreed to tell him what happened.

ANALYSIS

Mr. Karas argues that the trial court violated his right to a public trial when it heard unrecorded arguments and ruled on motions in chambers without conducting a *Bone-Club*[1] analysis.

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant the right to a public trial. A violation of the right to a public trial is structural error from which prejudice is presumed; accordingly, "a new trial is the only remedy." *State v. Frawley*, 181 Wn.2d 452, 459, 334 P.3d 1022 (2014); *State v. Wise*, 176 Wn.2d 1, 13-15, 288 P.3d 1113 (2012) (citing *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). A public trial right violation may be raised for the first time on appeal. *State v. Shearer*, 181 Wn.2d 564, 569-71, 334 P.3d 1078 (2014). Whether an accused's constitutional public trial right has been violated is a question of law reviewed de novo. *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

In analyzing whether a defendant's right to a public trial has been violated, we

> "begin by examining . . . [1] whether the public trial right is implicated at all . . . then turn to the question [2] whether, if the public trial right is implicated, there is in fact a closure of the courtroom; and if there is a closure, [3] whether . . . the closure was justified."

*State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014) (some alterations in original) (quoting *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)). In this case, as in the Washington Supreme Court's recent decision in *State v. Whitlock*, the second and third questions are easily answered: proceedings in a judge's chambers constitute a closure, and because the trial court did not conduct a *Bone-Club* analysis, the closure was not justified. 188 Wn.2d 511, 520-21, 396 P.3d 310 (2017).

At issue is only whether the public trial right attached to the trial court's hearing of two motions. The first motion sought routine application of the court's authority to exclude witnesses under ER 615, triggering the State's right under that rule to designate a representative who would not be excluded. The second motion was a case-specific motion in limine involving the conversation between the victim and the store cashier that Mr. Karas is alleged to have overheard. The State represents that the motion in limine was uncontested, *see* Br. of Resp't at 3, and perhaps it was uncontested that the officer could not testify to what he was told about the conversation. But whether the *victim* could testify to the conversation appears to have been contested, since the court stated "counsel can renew the objection [as] to that." RP (Apr. 14, 2016) at 83.

From the trial judge's statement on the record that he and the lawyers "discussed only legal issues" in chambers, he appears to have assumed that "legal issues" do not implicate public trial rights. But in *State v. Sublett*, 176 Wn.2d at 72-73, our Supreme Court rejected the legal and ministerial nature of proceedings, as distinguished from proceedings that are adversarial and factual, as the basis for determining whether the public trial right applies. *Smith*, 181 Wn.2d at 514. *Sublett* held that Washington courts are to apply experience and logic to make the determination. *Id.*

"The first part of the test, the experience prong, asks 'whether the place and process have historically been open to the press and general public.' The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (citations omitted) (quoting *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). Only if both questions are answered affirmatively does the public trial right apply. *Sublett*, 176 Wn.2d at 73. The defendant has the burden to show that the experience and logic test is satisfied. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296 P.3d 872 (2013).

The State places primary reliance for its position that there was no violation on *Smith*, in which our Supreme Court held that traditional sidebar conferences do not implicate the public trial right. It did not limit its treatment of sidebars to conferences taking place in the courtroom, at the bench; the sidebars in *Smith* took place in a hallway.

But it limited "'proper'" sidebars to "proceedings that 'deal with the mundane issues implicating little public interest[,] . . . done only to avoid disrupting the flow of trial, and either . . . on the record or . . . promptly memorialized in the record.'" *Whitlock*, 188 at 522 (alterations in original) (quoting *Smith*, 181 Wn.2d at 516 & n.10). It found that the "experience" prong was not established because "[s]idebar conferences have historically occurred outside the view of the public." *Smith*, 181 Wn.2d at 515. In holding that the "logic" prong was likewise not shown, it reasoned that "[f]or the public, discussions on hearsay and the prior inconsistent statement exception [at issue in *Smith*] are practically a foreign language," such that public access would play no positive role in the proceeding. *Id.* at 519. It held that a sidebar conference, "even if held outside the courtroom," does not implicate Washington's public trial right. *Id.*

Mr. Karas focuses on the Supreme Court's decision a few years later in *Whitlock*. In *Whitlock*, in the course of a bench trial, the State objected to questioning of a witness that could reveal to the defendants that she was a police informant. The court recessed proceedings to chambers to hear the lawyers' arguments and make its ruling. The proceedings in chambers were not recorded. While the parties made a record later that day of what had occurred, they did not make it promptly.

In Mr. Whitlock's appeal, the State characterized the chambers conference that had taken place during trial as equivalent to a midtrial sidebar and argued that *Smith* was controlling. But a unanimous Supreme Court held that the chambers conference in

7

*Whitlock* was not a "proper" sidebar conference. One reason was that the conference took place in chambers. Because a judge's chambers are closed to the public, the Court refused to treat a chambers conference as the functional equivalent as a conference at the bar. A second reason was the delay in memorializing what had occurred, particularly where there had been no reason for not handling the argument as a sidebar and recording it in real time. *Whitlock*, 188 Wn.2d at 522-23.

Mr. Karas's argument proceeds as if *Whitlock* held that anything that is not a sidebar is subject to the public trial right. But we do not read *Whitlock* as treating the characteristics of a proper sidebar as the new litmus test for applying the public trial right. It was because the State characterized the chambers conference as sidebar-like and invoked *Smith* that the Supreme Court focused on whether the conference qualified as a "proper" sidebar. We still examine experience and logic in determining whether the public trial right applies.

We turn first in this case to the trial court's consideration of a request to exclude witnesses and the State's identification of Officer Josh Mathena as its representative to attend the entire trial. Whether to exclude witnesses under ER 615 and who an attorney will designate as a client representative to attend trial falls in the category of housekeeping measures unrelated to the merits of a case. Such housekeeping measures have commonly been discussed in chambers or in a nonpublic scheduling call, or have been decided without discussion by a trial court that simply announces its usual practice.

8

Public access plays no significant positive role in the application of ER 615, which is rarely a matter of dispute and not very consequential if there is a dispute. Routine witness exclusion can fairly be characterized as a "mundane issue[ ] implicating little public interest." *Whitlock*, 188 Wn.2d at 513-14 (quoting *Smith*, 181 Wn.2d at 515).

The closer issue is the motion in limine that the court entertained in chambers. In *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 106, 340 P.3d 207 (2014), a plurality decision, the lead opinion observed that the Supreme Court "ha[d] not yet addressed whether a closure occurs when a trial judge discusses and rules on motions in limine in chambers." It acknowledged that in *Smith*, "we alluded to the fact that evidentiary motions may not implicate the public trial right," citing a footnote in which it has stated that while sidebars were at issue, "'The analysis would not change for on the record evidentiary conferences in chambers.'" *Id.* (quoting *Smith*, 181 Wn.2d at 512 n.3). The lead opinion went on to say that "because sidebars, and not evidentiary conferences, were at issue in that case we did not decide definitively one way or the other." *Id.* Concluding that it need not reach the issue of whether the public trial right applies to hearings on motions in limine, the lead opinion did not address it further. *Id.*

Five members of the *Speight* court (concurring Justice Madsen and the four dissenters) believed that to reach the majority's disposition of the case—denial of the personal restraint petition—the Court *did* need to address whether the public trial right applied to motions in limine. The dissenters believed that they alone could ignore the

9

issue, since they would have granted the petition and remanded for a new trial on the basis of a closure of voir dire. The public trial right status of motions in limine was addressed only by Justice Madsen's concurrence, which concluded that "under [the] experience and logic test, motions in limine do not implicate public trial rights." *Id.* at 112 (Madsen, J., concurring).

Addressing the experience prong, Justice Madsen concluded:

Motions in limine concern interlocutory pretrial decisions made by the trial court, typically involving legal questions about the admissibility of certain evidence. Often these pretrial decisions will be revisited during the course of proceedings as the evidence develops. As with rulings on contemporaneous objections to evidence, motions in limine are decided outside the hearing of the jury.

*Id.* at 110 (Madsen, J., concurring). We do not disagree with the observation that motions in limine are decided outside the hearing of the jury, but the question remains whether they have historically been decided somewhere other than in an open courtroom. Even if jurors must be absent, the defendant (when present) and members of the public may listen to proceedings that take place in an open courtroom.

*Speight* involved motions in limine raised pretrial that were heard on the first morning of trial, as is commonly the case. But because the trial court wanted to hear and decide the motions while members of the venire filled out jury questionnaires in the courtroom, the motions were heard in chambers. Relocating the hearing was understandable under the circumstances, but we submit that hearing motions in limine in

10

chambers is not the norm.  More often, as in the trial below, motions in limine raised

before trial are taken up by a court at a time when jurors or potential jurors are not

present.  The arguments therefore can and do take place in an open courtroom.

Turning to the logic prong, the State emphasizes the fact that in this case, as in

*Smith*, the motion in limine addressed a hearsay issue it contends was unlikely to be

understood by the public.  *Smith*, however, spoke of discussion of hearsay "and the prior

inconsistent statement exception," 181 Wn.2d at 519, a more arcane evidentiary issue

than those presented here.  Based on information gleaned from the CrR 3.5 hearing, the

defense motion in limine heard in chambers in this case concerned what would have been

pure hearsay coming from Officer Corulli.  Only slightly more complex was whether a

discussion of the victim's cache of cash that Mr. Karas possibly overheard could be

proved with testimony about statements that were not being offered for their truth.  These

are issues that an attentive and interested member of the public could grasp.  Public trust

is advanced by giving attentive, interested members of the public the opportunity to know

why evidence that seems relevant might be excluded for some countervailing reason.  *See

Smith*, 181 Wn.2d at 544 (Owens, J., dissenting) ("[H]iding discussions over evidence

and testimony in private will not further . . . goals" of "foster[ing] trust in our judicial

system, and . . . allow[ing] members of the public to see justice done in their

communities.").

11

No. 34899-7-III
*State v. Karas*

Mr. Karas satisfies us that motions in limine that are raised before trial and that can easily be resolved at times when jurors are not present have historically been open to the press and the general public, and that the functioning of evidentiary decision-making is served by allowing public access. For the trial court to hear and decide the motion in limine in chambers was a public trial right violation. On direct appeal that violation, without more, requires reversal. We reverse the judgment and sentence and remand for a new trial.[2]

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.

_____
[2] Our disposition renders moot three issues raised by Mr. Karas in a statement of additional grounds.